WEST RIVER BANK *v.* JOSEPH GALE.

*Homestead. Statute. (Comp. Sts., ch.* 65, § 6.) *(Gen. Sts., ch.* 68, § 1.)

Under the homestead act of 1849, (Comp. Sts., ch. 65, § 6,) a homestead is exempt from attachment on a debt which accrued *after* the purchase and record of the deed, but *before* the housekeeper took possession and occupied, he being in. the possession and occupancy when the attachment was put on.

Where a homestead consisted of a small parcel of land with a house and barn upon. it on one side of a highway, and a blacksmith's shop and water privilege on the opposite side, the whole worth less than $500, and in the use and occupancy of the housekeeper, but the shop not used for the purpose for which it was built, and it. not appearing that the water privilege had ever been used, it was *held* that the shop and water privilege were a part of the homestead, and exempt as such.

The same rule would probably hold if the housekeeper had been a blacksmith by trade and used the shop in his business.

Where a housekeeper left his homestead with the intention of returning to it after a temporary sojourn elsewhere for a specific purpose, but his absence was protracted by accidents longer than he originally contemplated, but he did not change his purpose to return, but carried it into effect as soon as he recovered from his injuries sufficiently to be removed to his home, it was *held* that the homestead was exempt during the time of such absence. (Gen. Sts., ch. 68, § 1.)

Where the findings in the county court are upon evidence tending to establish the facts found, they are conclusive upon the supreme court.

EJECTMENT. Plea, the general issue. Trial by the court, September term, 1868, BARRETT, J., presiding.

On the 20th day of June, 1855, the defendant purchased the premises in question, and took a deed of the same. These premises consisted of a small parcel of land; with a house and barn upon it, upon one side of a highway, and of a blacksmith's shop and water privilege on the opposite side of the highway. The whole worth less than five hundred dollars. The defendant. caused his deed of the premises to be recorded on the 3d day of

·March, 1857. In the fall of 1859 the defendant owned a hotel in Winhall, subject to a mortgage for near its value, and lived in and kept the hotel. On the 25th day of November, 1859, while he so lived in and kept this hotel, he signed a note of $         as surety for some person, payable to the plaintiff.

In April, 1860, the defendant moved with his family into the premises in question. On the 7th day of December, 1861, the plaintiff commenced a suit upon the note against the defendant, in the county court, and caused the premises in question to be attached in that suit; and such proceedings·were had in the case that at the February term of the supreme court, in 1863, the plaintiff recovered judgment therein for the sum of $879.50 damages, and $23.37 cost of suit.

At this time the barn upon the premises had fallen down, (viz: in the winter of 1862,) and the defendant had thereupon commenced using the blacksmith's shop for a barn and wood-shed. On the 21st day of February, 1863, the plaintiff took out execution upon this judgment, and on the 3d day of April caused the same to be levied upon the blacksmith's shop and mill privilege, and had the same set out, in satisfaction of the execution, to the amount of forty dollars. The officer caused the execution, with his return, to be recorded in the land records of Jamaica on the 11th day of April, 1863, and in the county clerk's office on the 16th day of April, 1863. In the fall of 1865 the defendant had rented the upper part of the house to one Mrs. Kingsbury, by the month, and he lived in the lower part. While so situated he moved his family and household goods, with the exception of a cooking stove and three or four chairs and some other articles, to Weston, to ·board some men while doing a job, intending to return when the job was finished. He also left some potatoes and corn. In the latter part of the winter of 1865-6 the job was fin-·ished. On the 3d day of March, 1866, the defendant removed from Weston into Londonderry, intending ultimately to return to his house, on the premises in question, but he rented the lower part of the house and the land to one Arnold Kingsbury, for one year, and got away his potatoes and corn. In November, 1866, the defendant would have moved into the upper part of the house,

which was still occupied by Mrs. Kingsbury, but she was sick and could not move out so that he could move in, and he moved into another house, in Jamaica, a mile or two distant. In moving this time, he was accidentally injured so badly that when Mrs. Kingsbury was able to move out of the upper part of his house, he was not able to move in. On the 30th day of November, 1866, the plaintiff brought a *scire facias* upon the judgment before mentioned, and on the 1st day of December, 1866, had the house and land on that side of the road attached upon it. At the February term, 1867, of the supreme court, the plaintiff obtained a new execution upon the judgment, issued on the 20th day of February, 1867, and on the 27th day of February, 1867, caused it to be levied upon the house and land on that side of the road, and had the same set out, in satisfaction of the execution, to the amount of three hundred and seventy-five dollars. The officer returned the execution to the town clerk's office in Jamaica, and had the same and his return upon it recorded there on the 28th day of February, 1867, and to the county clerk's office and recorded there on the 5th day of March, 1867. On the 1st day of April, 1867, which was as soon as he was able to be moved, the defendant moved into the upper part of the house. This suit was commenced on the 29th day of August, 1867. The defendant was then, and still is, in possession of the premises, the use of which is worth forty dollars annually.

No question was made but that the proceedings and levies were all regular and valid, provided the premises in question were subject to attachment and levy, as against the defendant's claim of a homestead. After the defendant left the hotel in Winhall, that went in satisfaction of the mortgage upon it, and since then he has owned no real estate except the premises in question.

It did not appear at what time the cause of action accrued on which the original attachment was made, and judgment was obtained, the said execution for which was levied on the premises. From the evidence in the case, the substance of which is stated above, the court found and held that the parcel first levied on was held and used by Gale in connection with the dwelling-house, for homestead purposes, and not as a shop and mill privilege ;

that Gale's removal to Weston was for a temporary purpose, and with the intent on his part of returning to and resuming his living in the premises as soon as the temporary purpose was served, and that he did not intend nor suppose that he was abandoning the premises as his homestead in so doing ; that he remained in the same intent and mind during all the time of his absence ; that he was delayed in returning after he got through his stay in Weston by casual and unexpected incidents and accidents.

The court rendered judgment for the defendant. The plaintiff excepted.

*Hoyt H. Wheeler*, for the plaintiff.

*Charles N. Davenport*, for the defendant.

The opinion of the court was delivered by

PIERPOINT, C. J. This is an action of ejectment. The plaintiff claims title to the premises in question, under a set off of the same upon executions against the defendant. The defendant insists that the plaintiff acquired no title to the premises by virtue of such proceedings, for the reason that at the time of the attachment and set off, the premises constituted the defendant's homestead, and as such were exempt by statute.

It appears from the bill of exceptions, that the defendant purchased the premises, and took a deed thereof on the 20th day of June, 1855. He put his deed upon record the 3d day of March, 1857. On the 25th day of November, 1859, the defendant signed a note as surety to the plaintiff. In April, 1860, the defendant moved with his family on to the premises in question, and continued to reside there, making it his home. In December, 1861, the plaintiff commenced a suit upon said note and attached said premises, and in 1863 obtained a judgment thereon ; and the premises were set off in separate parcels at different times, and upon different executions issued at different times upon said judgment. It is conceded that the whole premises did not exceed in value the sum of $500.

It is claimed by the plaintiff that the premises were not exempt

from attachment upon this debt, by the statute, as the debt existed at the time the defendant moved on to the premises, and first commenced to occupy it as a homestead.

The statute in force at that time is as follows: " Such homestead shall be subject to attachment and execution, upon any contract that may be made, and for all matters and causes of action which may accrue, previous to, or at the time of the purchase of such homestead, etc., and the time when the deed to the owner of such homestead shall be left in the town clerk's office for record, shall be deemed the time of the purchase thereof for the purpose mentioned in this act." Comp. Stat., chapter 65, § 6.

In this case the defendant purchased the premises and recorded his deed before this debt to the plaintiff was contracted. He took possession of it, and occupied it as a homestead after the debt was contracted, and before it was attached by the plaintiff. What the effect would have been if the plaintiff had attached the premises before the defendant had commenced its occupation as a homestead, it is not necessary to inquire; the only question now is whether the premises were subject to the attachment while occupied as a homestead, in consequence of the existence of the debt prior to the commencement of such occupation. This must depend upon the construction of the statute.

The statute, by its terms, clearly exempts the homestead from attachment on all debts except such as have an existence at the time the deed thereof is left for record. The word homestead is evidently used in the statute with reference to the condition of the premises in that respect, at the time the attempt is made to attach or levy upon it, and not to its condition at the time the deed is left for record. Ordinarily the homestead is purchased and the deed recorded before the occupation commences, often a long time before. Men often own more than one place suitable for a homestead, and are at perfect liberty to change their homestead at pleasure. The statute was not intended to impose any restraint upon their doing so. The object of the legislature in this provision evidently was to prevent men, after they had obtained a credit, from putting their property into a homestead, and thus preventing their creditors from reaching it by attachment, and

this object is fully accomplished by making it subject to all debts that existed prior to the purchase; and to make the period definite and always susceptible of proof, they fixed upon the period of the leaving of the deed for record, the town clerk being required by law, in all cases, to write upon all deeds, left for record, the time, day and hour, when they are so left.

If the legislature had intended to leave the homestead subject to attachment, on all debts existing at the time it was first occupied as such, language would have been used indicating such an intent; certainly different language would have been used from that above recited. In this case we think the defendant's homestead in the premises was not subject to attachment when the attempt was made, by reason of the time when the plaintiff's debt was contracted.

The plaintiff further claims that he acquired, by his levy, a good title to that part of the premises which he set off, on the 3d of April, 1863, on the ground that it did not constitute a part of the homestead. The case shows that the whole premises "consisted of a small parcel of land with a house and barn upon it, upon one side of a highway, and a blacksmith's shop and water privilege on the opposite side of the highway; the whole worth less than five hundred dollars."

It is not claimed that the part set off at that time was subject to attachment in consequence of its being separated by a highway from the part on which the dwelling-house stood, but by reason of its having a blacksmith's shop and water privilege upon it. The defendant was in the possession and occupation of this part in connection with the whole premises. Neither the defendant nor any one else was using the shop for the purpose for which it was built; and the water privilege does not appear to have ever been used for any purpose; and there is nothing to show that the defendant was using this part except in connection with the other, and in the way in which the homestead premises are ordinarily used. If the defendant had been a blacksmith by trade and had used this shop in his business, we are not prepared to say that it would have made any difference in respect to his right of homestead therein. The legislature probably did not intend to restrict

the use of the homestead to the ordinary domestic purposes of housekeeping, but to give a man a place exempt from attachment, not exceeding $500 in value, with the privilege of occupying and using it as a homestead in such manner as he shall think best calculated to enable him to support his family. At all events we see nothing in this case to warrant us in saying that the part set off as aforesaid did not constitute a part of the homestead.

But the plaintiff insists that he obtained a title to the part of the premises on which the dwelling-house stood, by the levy of the 27th of February, 1867, the defendant at that time not being in the occupation of the premises as a homestead.

In section 1 of chapter 65 of the Compiled Statutes it is provided that "the homestead of every housekeeper, or head of a family, residing in this State to the value of $500, such homestead consisting of a dwelling-house, outbuildings and lands appurtenant, occupied by such person as a homestead, etc." Under this section it was held in *True et al.* v. *Estate of Morrill*, 28 Vt., 672, that to constitute a place a homestead within the meaning of the statute, there must be a personal occupation thereof, by the housekeeper, or head of a family. In *Davis and Wife* v. *Andrus*, while recognizing the same doctrine, Judge POLAND says: "It is not true that every temporary absence from home would authorize creditors to take a man's homestead, or authorize him to convey it, to bar the right of his wife, but an abandonment of it, as a home and setting up another, we think would have that effect. It may frequently become a nice question whether the absence is of such a temporary character and purpose, that the home or domicil still continues, or whether it is changed to another place, and so lost to the first, or not, but when it is made clear that the residence and home of the family has been changed, the right of homestead in the old residence is changed." It might be claimed with considerable force that, under the findings of the court below, this case comes fairly within the principles above enunciated by Judge POLAND, but it will be observed that since those decisions were made, the statute has been materially altered in its phraseology, evidently with the intention of giving it a more extended opera-

tion than it originally had, under the above decisions. In section 1 of chapter 68 of the General Statutes, which was in force at the time the levy aforesaid was made, the language is substantially the same as in the Compiled Statutes, section 1, before recited, except that in place of the words " *occupied* by such persons as a homestead," in the Compiled Statutes, the words " *used or kept* by such housekeeper or head of a family," etc., are used in the General Statutes. The alteration is quite significant, and bears directly upon the question now under consideration. In this case the defendant was not in the actual occupation of the premises as a homestead at the time it was levied upon, nor was it being used as such, but we think, under the findings of the county court, it cannot be said that the premises were not at the time being kept as a homestead.

When the defendant left, he did not intend to abandon the place as his homestead, but to retain it, leaving a part of his furniture, with the intent to return to it after a temporary sojourn elsewhere for a specific purpose. His absence was protracted by accidents beyond what he originally contemplated, but he did not change his purpose to return, but carried it into effect as soon as he recovered from his injuries sufficiently to be removed to his home. The findings of the county court were upon evidence tending to establish the facts found, and are conclusive upon this court.

We find no error in judgment of the court below.

Judgment affirmed.