HENRY SPAULDING v. FREEMAN CRANE, SOPHIA HALL, HORACE HALL, NELSON HALL, AND ERASMUS D. HALL.

### Homestead. Mortgage.

The homestead act as it stood in 1857, required actual residence upon the premises, and occupation thereof *as a homestead*, in order to make it necessary for the wife of the occupant to join in a mortgage thereof.

One of the defendants held a prior mortgage on the premises described in the orator's mortgage, which he discharged of record, without consideration, for the sole benefit of his mother, to whom said premises had been set out by the probate court as a homestead. *Held*, that said mortgage was not thereby extinguished as to the orator, and that the orator was not entitled to a decree for the foreclosure of his mortgage, without redeeming the same.

APPEAL from the court of chancery. The petition alleged that Hiland Hall, late of Bristol, deceased, on the 25th of August, 1857, duly executed to the orator a mortgage deed of a lot of land, with a house thereon partly finished, situate in the village of Bristol, to secure the orator for what money, lumber, and materials he had advanced to the said Hall towards the erection of said house, and what he should advance within two years thereafter; that there was about $1,000 due on said mortgage; that the said Hiland Hall deceased some time in the year 1861; that the said Crane was his administrator, the said Sophia Hall his widow, and the other defendants his children; and prayed for a decree of foreclosure. The said Erasmus D. Hall answered, admitting the allegations of the petition, but alleging that before the execution of said mortgage, to wit, on the 4th day of April, 1857, the said Hiland Hall mortgaged said prem-

ises to one Page Morrison, to secure the purchase money due therefor, which said last-mentioned mortgage was duly executed, acknowledged, and recorded, and was prior in time and in right to the mortgage described in said petition ; that afterwards, to wit, on the 28th day of November, 1859, the said Morrison, for a valuable consideration, assigned and transferred said mortgage so ex· cuted to him as aforesaid, to the said Erasmus, together with the debt secured thereby ; that the same was still due and unpaid, and constituted a prior incumbrance upon said premises ; and insisted that the orator was not entitled to a decree of foreclosure against him, the said Erasmus, without first paying him the amount due on said mortgage assigned to him as aforesaid.

The said Sophia Hall answered, substantially admitting the allegations of the petition, except as to the amount due on the mortgage, but alleged, that the said Hiland Hall, in April, 1857, purchased said premises of the said Morrison, for a homestead for himself and family, and proceeded at once to make repairs thereon and to enter into the occupancy thereof, and that as soon as said repairs were made, he used and occupied the same as a homestead up to the time of his death ; that she did not join her husband in the execution of said mortgage to the petitioner, and that therefore the same was of no effect as against her right of homestead in said premises ; that on the 14th day of April, 1862, said premises were duly set out to her by the probate court, as a homestead, according to the statute in such case made and provided, whereof the orator had notice, but did not appeal from the decree of the probate court in the premises ; and insisted that said decree was binding and conclusive upon the orator.

The orator replied to the answer of the said Erasmus, admitting the execution of the Page Morrison mortgage, and alleged that it was given to secure the payment of one note signed by Charles Whitney, for two hundred and twelve dollars, and one note signed by the said Hiland Hall, for forty-three dollars ; that the said first-mentioned note was not paid by the said Erasmus, but by the said Charles Whitney, or by his father, one James Whitney ; that the said last-mentioned note was not paid

by the said Erasmus, but by the said Hiland Hall; that, not-withstanding said mortgage was assigned by the said Morrison to the said Erasmus, the said Erasmus paid nothing there-for, but that the said assignment was made as aforesaid, by fraud and collusion between the said Hiland and the said Eras-mus, for the purpose of defrauding the orator; that on the 6th day of December, 1866, the said Erasmus executed a receipt and discharge in full of his right, title, and interest in and to said mortgage and assignment, in accordance with the statutes of the state of Vermont, as appeared by the land-records of said Bris-tol; and that there was nothing then due on said mortgage, and the said Erasmus had no interest, legal or equitable, therein.

To the answer of the said Sophia, the orator replied, that he had no knowledge of the proceedings of the probate court in set-ting out said homestead, but had heard that such proceedings had been had; insisted that if they had been, his rights were not affected thereby; admitted that the said Sophia did not join with her husband in the execution of the orator's mortgage, but insisted that it was not necessary that she should, for the reason that at the time of the execution thereof, the said Hiland did not occupy said premises as a homestead, and did not then live and reside thereon; that the house now standing thereon was then in process of erection, and that the orator furnished the building material, for which his said mortgage was executed; that the said Sophia did not then live with her said husband, and never did thereafter; that the said Hiland did not reside and live upon said premises until after the completion of said house, which was some time after the execution of the orator's mortgage, but that he lived and resided elsewhere at the time of the execution thereof; admitted that the said Hiland purchased said premises of the said Morrison, and that he proceeded to build a house thereon, and that he lived there after the completion of said house, till his decease.

It appeared from the orator's testimony, that the said Hiland owned an interest in a place called the Chase place, in said Bristol, but that he sold it before he purchased the premises in controversy; that he purchased the last-mentioned premises for the purpose of making himself a home, and that at the time of his

purchase thereof; there was a ruinous old house thereon, unfit for habitation ; that he commenced repairing said house some time that summer, and built it all over new, except the frame, and got it ready to occupy some time that fall, after the execution of the orator's mortgage, when he moved into it, up to which time he had continued to live on the Chase place. It further appeared, that when the orator's mortgage was executed, said house was not nearly finished, and was not in a condition to be occupied as a dwelling, and that the said Sophia never lived with her husband in said house. It further appeared that the Page Morrison mortgage was discharged of record by the said Erasmus, on the margin of the record of the assignment thereof to him, in the words and figures following :

" Having received payment in full for the within assignment, together with all the interest, right, and title that I may have in and to the same. Bristol, Nov. 6, 1866. ERASMUS D. HALL."

The said Erasmus testified that he discharged said mortgage as aforesaid, for the purpose of giving his mother a clear title to the place, as it had been set out to her as a homestead, and that he received no consideration for so doing, and should not have so done, but for the purpose aforesaid ; that he had no communication with the orator about it, and did it solely for his mother's benefit, and that no one had ever paid him anything on account of said mortgage.

The court, at the June term, 1872, Addison county, PIERPOINT, Chancellor, dismissed the petition with costs. Appeal by the orator.

*A. V. Spalding,* for the orator.

The mortgage was valid to convey the mortgaged premises without the wife's joining in the deed. They were not *occupied* by the mortgagor as a homestead when the deed was executed. As the statute read at that time, there must have been a *personal occupation* of the premises *for a home*, by the head of the family, in order to constitute a homestead within the meaning of the statute. Comp. Sts. ch. 65, § 1 ; *Howe* v. *Adams*, 28 Vt. 544 ; *True et al.* v. *Estate of Morrill*, Ib. 672 ; *Howe* v. *Adams*, Ib. 541 ;

*Davis & wife* v. *Andrews,* 30 Vt. 678 ; *McClary* v. *Bixby,* 36 Vt. 254; *West River Bank* v. *Gale,* 42 Vt. 27 ; 1 Bouv. Law Dict.; 1 Washb. Real Prop. (3d ed.) 329.

In equity, the mortgage should be considered as having been given for the purchase money. The house was not habitable for a dwelling place till the repairs were made, and the mortgage was given for the repairs. *Horn* v. *Tufts,* 39 N. H. 478.

The proceedings of the probate court do not affect the orator's rights in any way. His mortgage was upon record, and this was notice to the whole world, including the probate court, of his mortgage title to said property. He had no notice of its proceedings, and if he had had notice, the probate court was not the proper tribunal to pass on the validity of his claim. It is in no sense *res adjudicata* by reason of any proceedings of the probate court. It was an *ex parte* proceeding. 2 Bouv. Law Dict., and cases there cited.

The defendant Hall is estopped from setting up the Page Morrison mortgage as a prior mortgage against the orator. He has discharged the same on record, which extinguishes it for all purposes, and perpetually bars him from reviving it. It is an estoppel to his showing a want of consideration for the discharge. *Hicks et al.* v. *Cram,* 17 Vt. 449 ; *Downer* v. *Flint et al.* 28 Vt. 527 ; *Spiller* v. *Scribner,* 36 Vt. 245 ; *Halloran* v. *Whitcomb,* 43 Vt. 306 ; Gen. Sts. ch. 65, § 29. Even a receipt in full of the mortgage debt is an equitable release of the mortgage. 1 Hilliard Mort. 485.

*Stewart & Eldridge,* for the defendants.

The mortgage to the petitioner was invalid as against the wife of the mortgagor. It appears that the mortgagor sold his homestead, bought the premises in question for a homestead, began immediately to repair the house, and as soon as it was finished. took up his abode and continued to live in it until he died. In other words he changed homesteads, temporarily residing in the one he sold, until the other was habitable. The case stands upon this statement precisely as though he had previously occupied the house so purchased, and had temporarily vacated it for necessary

repairs. During intervals of temporary absence, for whatever cause, the homestead is under the the protection of statute. *Davis & wife* v. *Andrews*, 30 Vt. 678. The premises having been purchased for a homestead, its immediate occupancy by the deceased, for making necessary repairs, was sufficient to bring the case within the act of 1849.

The right of the widow cannot be affected by her absence or separation from her husband. Her right is created by statute, and arises from the legal relation of the parties, irrespective of propinquity or cohabitation.

The mortgage of the defendant Hall should be reinstated, as against the orator. The mortgage debt was never in fact paid. The orator was not privy to its discharge. The consideration therefor did not move from him, and his rights under his mortgage, if he has any, will stand as they did when it was executed. The discharge was made solely for the benefit of his mother, and while as to her right the discharge might be an estoppel, yet the orator cannot so plead it, for reasons above stated. 2 Swift Dig. 93 ; 9 Vez. 275.

The opinion of the court was delivered by

WHEELER, J. I. From the pleadings and evidence in this case, it is clear that at the time when Hiland Hall, the intestate, executed the mortgage to the orator, he resided at the place called the Chase place, away from the premises in controversy, and not on those premises, although he was then in possession of them, preparing them for a home, and afterwards did actually reside upon them. The most important question in the case is, whether under these circumstances, the intestate could at that time mortgage the premises, without his wife joining with him, so that the mortgage would hold the premises against the homestead right of his wife and children after his decease, or not. The statutes on this subject have been materially altered since that time, and the question is to be decided upon the statutes as they then stood: The statutes then in force provided that " the homestead of every housekeeper or head of a family residing in this state, to the value of five hundred dollars—such homestead consisting of a dwelling

house out buildings and lands appurtenant, occupied by such person as a homestead "—should be exempt from attachment and execution on certain debts, and should not be alienated or mortgaged by the owner, if a married man, except by the joint deed of such husband and wife. This statute required more than that the premises should be occupied by the housekeeper or head of a family ; it required that they should be occupied by him *as a homestead.* Occupation of a dwelling house as a homestead, could not well be less than residence in the house by the occupant, and the fair and plain import of the language of the statute would seem clearly to require actual residence upon the premises, to make them a homestead. This question is different from some of those that have arisen concerning the liability of homesteads to attachment. The homestead statutes have always provided that homesteads should not be liable to attachment for debts created after the homesteads were acquired, and that the time of the filing of the deeds of homesteads for record, should be deemed to be the time when they were acquired for that purpose. This provision has always been in a section by itself, and has had no reference to the right to alienate or mortgage by the owner. The question of liability to attachment has turned upon the question whether the debt was created before the filing of the deed or not, without reference to whether the premises were occupied as a homestead or not at the time of contracting the debt, if they were so occupied before attachment or levy. *West River Bank* v. *Gale*, 42 Vt. 27 ; *Lamb* v. *Mason*, 45 Vt. 500. This question as to the power of the husband to mortgage, is to be determined, therefore, without reference to whether the debt secured by the mortgage was one on which the premises could be held by attachment after they were in fact occupied by him as a residence. The provisions of the statute as to what should pass as a homestead to widows and children, are the same as those as to what should not be alienated or mortgaged without the wife's joining ; and what would be a homestead in one of these cases, would be in the other. In *True et als.* v. *Est. of Morrill*, 28 Vt 672, the question was as to what would pass to the widow of Morrill. He was boarding near by a place he owned, on which was a barn and an old

house occupied by a tenant, and he had contemplated building a house there for his own occupation, and made some preparation therefor by procuring building materials, and attempted to negotiate for the building of it. The court held that he had not any homestead there that would pass to the widow. That question arose under this same statute. Judge BENNETT, in delivering the opinion of the court, said : " Where the statute speaks of a housekeeper or head of a family occupying a place as a homestead, it no doubt refers to a personal occupation and not by a tenant." The question in *Davis & wife* v. *Andrews*, 30 Vt. 678, was as to the power of the husband to alienate alone premises where he had had homestead, but on which he had ceased to reside. It was held that he could so alienate, and POLAND, J., in the opinion said : "It is not enough that the housekeeper may still have the legal possession of the old or former homestead so that he could maintain trespass for an injury to it ; the question is, does he occupy it for a homestead ; does he live and have his home there ?" In *McClary* v. *Bixby*, 36 Vt. 254, the question was as to what would pass as a homestead by descent under this statute, and in the course of the opinion Judge KELLOGG said : " The essential condition to the existence of the homestead right, is the actual personal occupancy by the husband or head of the family of a dwelling house and lands appurtenant as a homestead, or family home." In *West River Bank* v. *Gale*, before cited, one question considered was as to the existence of a homestead right in the debtor at the time of levy. He had left his homestead and rented part of it to a tenant, intending to return, and been prevented from returning by sickness of the tenant and lameness of himself. It was held he had a homestead right under the provisions of the general statutes, but from the opinion by PIERPOINT, Ch. J., it appears to have been considered that he would not have had under this statute. Courts in other states appear to have held that homestead rights would not exist under circumstances like those in this case, and under statutes similar to this. *Lee* v. *Miller*, 11 Allen, 37 ; 1 Am. Law Reg N. S. 650–1, and numerous cases cited there. It has been suggested in this case, that if the homestead right would not attach under circumstances like these, a per-

son seeking to obtain a homestead would be embarrassed by the liability of premises purchased for that purpose to attachment before they could be occupied by residence. But the homestead has never been made exempt from liability for debts that were created before or at the time it was acquired as before mentioned, and therefore its liability to such debts would not be affected at all by any consideration as to when, or under what circumstances after the filing of the deed for record, premises would become a homestead for other purposes. A definite rule was provided for ascertaining what debts a homestead would be liable to, and one that the facts to apply it to would be open to all persons, and that could be applied readily and easily ; and it would seem to have been the design of this statute to make the power of the husband to alienate or mortgage without the wife's joining, readily ascertainable by finding whether the premises were occupied by him as a residence, without leaving it to depend upon his intentions, which might be known only to himself, and about which his expressions might not bind nor estop other persons with whom questions concerning his power might arise.

In view of the plain words of this statute and the exposition of them in the cases mentioned, and of these other considerations, it seems clear that under this statute nothing short of actual residence upon premises intended for a homestead, would give the character of a homestead to them so as to cut off the right of the owner to alienate or mortgage them. The orator's mortgage is therefore considered valid against the homestead claim set up in the defence.

II. It is also clear that Erasmus D. Hall discharged the Page-Morrison mortgage for the benefit of his mother, Sophia Hall, without payment of it by her, to help her estate in the premises to that extent. She had an estate in the premises at that time, which had passed to her as a homestead right at the decease of her husband. Her estate was subject to the orator's mortgage, but notwithstanding that, she had the equity of redemption of both mortgages vested in her and her minor children. If she had paid off this Morrison mortgage to her son while so situated, and procured him to discharge it, as that was prior to the

orator's mortgage, she could have stood upon it against his mortgage to the same extent that the original mortgagee could.  *Walker* v. *King*, *et als.* 44 Vt. 601.  Her son waived payment of it, and discharged it for her benefit, not for the benefit of the orator; and whether he should insist upon payment or waive it, would be nothing to the orator, for it would be no worse for him to redeem that mortgage in the hands of one than it would be in the hands of the other.  The orator therefore is not entitled to a decree of foreclosure of his mortgage, until he redeems the Morrison mortgage by paying the sum due on it to the defendant Sophia Hall.

The decree of the court of chancery is reversed, and the cause is remanded to that court, with directions to enter a decree of foreclosure of the orator's mortgage against all the defendants except Sophia Hall, and against her, upon his redemption of the Morrison mortgage in her hands, or the deposit of the amount due on it with the clerk for her benefit.