## ZADOCK H. CANFIELD v. SEYMOUR HARD.

*Mortgage. Equitable Owner in Possession. Homestead. Ejectment.* R. L. ss. 1904–7, 1953.

1. A party must show that he was injured by the charge, where the only error, if any, was, that it was inapplicable.

2. MORTGAGE—ADVERSE POSSESSION—CLAIMANT. A mortgage of land in the actual adverse possession of one claiming to hold adversely to the mortgagor, is void as to the claimant; thus, in an action of ejectment between a mortgagee and such claimant, the court instructed the jury, that if the defendant's possession was "*actual, visible, open, notorious, and hostile, under a claim* of ownership," the mortgage was void as to him; *Held,* correct.

3. PUT UPON INQUIRY. The purchaser was put upon inquiry; and it was not sufficient to inquire of the mortgagor; but he should have inquired of the possessor, and before the mortgage was taken. He cannot now assume from any subsequent reply, that he could not have learned the truth from the party in possession by due inquiry.

4. HOMESTEAD—EQUITABLE OWNER. One may have a homestead in a house which he has erected on land occupied by him under a verbal agreement to convey to him, but such an agreement as a court of equity would decree to be performed; and, under our statute, he cannot relinquish his homestead right by any oral statement or by acknowledging himself as tenant to one who claims under a mortgage executed by the original owner of the land after the erection of the house.

5. EJECTMENT. In an action of ejectment, where the defendant is entitled to a homestead, and the premises in contention are worth more than $500, the plaintiff cannot recover the excess; as the statute, R. L. sec. 1907, which provides for setting out the homestead by commissioners, is not applicable to a trial by jury. The verdict could not properly describe what was recovered.

6. EVIDENCE—GENERAL REPUTATION. In an action of ejectment, general reputation in the vicinity of the premises as to the ownership thereof, is not admissible.

7. GIFT OF LAND. Distinction between a gift of land, not enforceable, and a contract with a consideration.

EJECTMENT. Plea, general issue. Trial by jury, June Term, 1883, Bennington County, VEAZEY, J., presiding. Judgment on verdict for the defendant.

The plaintiff's evidence tended to show that Levine Hard mortgaged his farm to him and his brother in 1871, and also, a few days later, to one Montgomery; that said Montgomery foreclosed his mortgage, and on July 21, 1879, conveyed the premises to the plaintiff; that pending said foreclosure proceedings, said Levine conveyed said farm to Mary Houston; that in April, 1880, the plaintiff rented the demanded premises to the defendant for one year, and that the letting was renewed the next year; and that the premises in question were a part of said farm. The defendant's claims and evidence are sufficiently stated in the opinion of the court.

The plaintiff, in rebuttal, offered evidence tending to show that said defendant's occupation of said premises was not adverse to the said Levine, but by his permission; and that the defendant did not treat nor claim said premises as his own private property; that when the plaintiff, in 1879, was about to buy the Montgomery title, he applied to the said Levine to know if the defendant had any claim or right in said premises, and that afterwards the defendant came to the plaintiff and stated that he did not make any claim thereto, and also sent word to the same effect.

The plaintiff also introduced a deed from the said defendant to said Mary Houston, dated November 19, 1879, and one from said Mary Houston to the plaintiff, dated September 14, 1880.

The plaintiff's 13th, 14th, and 15th requests to the court to charge the jury, in substance, were: that if the jury find that the defendant was holding in July, 1879, adversely to the Montgomery mortgage, it would not be the duty of the plaintiff, when buying that mortgage, to do more than make

reasonable inquiry of the defendant as to the terms of his possession; that the plaintiff is chargeable, not with what the defendant now claims, but with what the plaintiff would have learned by such inquiry in 1879; that if the plaintiff at that time would not have learned by reasonable inquiry of the defendant that he was holding adversely to the Montgomery mortgage, then the plaintiff was not chargeable with notice of the defendant's claims.

*Burton & Munson* and *J. K. Batchelder*, for the plaintiff.

The court erred in refusing the plaintiff's 13th, 14th, and 15th requests, which were, in substance, that if the defendant was holding adversely in 1879 to the Montgomery mortgage, it was the duty of the plaintiff to only make reasonable inquiry of the defendant as to the terms of his possession; and that plaintiff is chargeable by reason of such possession, not with what the defendant now claims, but with what the plaintiff would then have learned. The question is: Did the plaintiff make reasonable inquiry? *Savings Bank* v. *National Bank*, 53 Vt. 89; *Seymour* v. *Darrow*, 31 Vt. 139; *Stafford* v. *Ballou*, 17 Vt. 329; *Blaisdell* v. *Stevens*, 16 Vt. 186.

Open, exclusive possession is sufficient to put the purchaser on inquiry; *Shaw* v. *Beebe*, 35 Vt. 205; but this possession was not such as to render this mortgage void. *Ripley* v. *Yale*, 18 Vt. 220; *S. C.* 19 Vt. 156.

The defendant's homestead interest could not attach until the expiration of fifteen years. His evidence tends to show nothing more than a parol gift of the land. A court of equity will not enforce a voluntary agreement. *Antrobus* v. *Smith*, 12 Ves. Jr. 39; *Edwards* v. *Jones*, 1 Mylne & C. 226; *Meek* v. *Kettlewell*, 1 Hare, 464; *Taylor* v. *Staples*, 8 R. I. 170.

The fact that the defendant made improvements does not help the case towards an equitable ownership. *Pinckard* v. *Pinckard's Heirs & Adm'rs*, 23 Ala. 649; *DeVeaux* v. *De-*

*Veaux,* 1 Strob. Eq. 283; *Rucker* v. *Abell,* 8 B. Mon. 566; *Boze* v. *Davis,* 14 Tex. 331.

Some of the cases hold that the donee has an equitable lien for what he has expended; but there can be no homestead in such lien. Possession under a contract not enforceable in equity is not adverse. *Briggs* v. *Prosser,* 14 Wend. 227; *Jackson* v. *Johnson,* 5 Cow. 74.

At all events, the plaintiff can recover the excess above the homestead. *Evarts* v. *Dunton,* Brayt. 67; 1 Burr. 329; *Guy* v. *Rand,* Cro. Eliz. 13.

*J. C. Baker,* for the defendant.

The consideration for the land on which the house was erected, was the removal of the defendant to it, and taking a permanent interest in the father's business. Lasting improvements were made on the land. A court of equity would have decreed specific performance. Story Eq. s. 761; Brown Fixt. s. 487; *Adams* v. *Rockwell,* 16 Wend. 285; *Harder* v. *Harder,* 2 Sandf. 17; *Stark* v. *Wilder,* 36 Vt. 752; *Griffith* v. *Abbott,* 56 Vt. 356; *Holmes* v. *Caden,* 57 Vt. 111.

A parol promise to "give" land, accompanied with possession and with substantial improvements, will be enforced in equity. *Freeman* v. *Freeman,* 43 N. Y. 34; *Hardesty* v. *Richardson,* 44 Md. 617.

In such case the land is treated precisely as if the conveyance had been made. Story Eq. 790; *Huffman* v. *Hummer,* 2 C. E. Green, 263; *Worrall* v. *Munn,* 38 N. Y. 137; *Seton* v. *Slade,* 7 Ves. Jr. 264.

The defendant had a homestead in the premises, which could not be lost by any statement, or acknowledgment of tenancy, or by his deed, unless his wife joined. R. L. s. 1904; *Abell* v. *Lathrop,* 47 Vt. 375; *Whiteman* v. *Field,* 53 Vt. 554; *McClary* v. *Bixby,* 36 Vt. 254; *Jewett* v. *Guyer,* 38 Vt. 218; *Danforth* v. *Beattie,* 43 Vt. 138.

Certainly the defendant had an equitable interest in this land, as soon as he completed his house; and one may have

a homestead right in such interest. *Morgan* v. *Stearns*, 41 Vt. 398; *Doane's Exr.* v. *Doane*, 46 Vt. 485.

The plaintiff could not recover the excess above the homestead. *Pardee* v. *Lindley*, 31 Ill. 174.

The mortgage was void as to the defendants. *Stevens* v. *Whitcomb*, 16 Vt. 121; *Ripley* v. *Yale*, 19 Vt. 156.

The plaintiff was put upon inquiry; and took his deed subject to the rights of the party in possession. *McDaniels* v. *Flower Brook Mfg. Co.* 22 Vt. 274; *Stevens* v. *Goodenough*, 26 Vt. 676; *Pope* v. *Henry*, 24 Vt. 560; *Sellick* v. *Starr*, 5 Vt. 255.

The opinion of the court was delivered by

Ross, J. The plaintiff placed his right to recover the demanded premises upon the fact that he held the record title.

The defence rested upon three grounds; that the defendant was in adverse possession of the premises, claiming to own them when the plaintiff took his deed thereof; that he had acquired a possessory title thereto by fifteen years of con tinuous, open, adverse possession, under a claim of ownership; and that, if he had not acquired such title, he went into the occupation of the premises under such circumstances that an equitable interest therein at once accrued to him, and, thereby, a homestead right, which he could not state away nor defeat by acknowledging himself to be tenant to the plaintiff, and could only convey by deed in which his wife joined. He gave evidence, which was more or less contradicted by the evidence introduced by the plaintiff, in support of these several grounds of defence. It was therefore incumbent upon the court to adapt its instructions to the jury, to the issues thus formed.

I. It is not contended that the instructions in regard to acquiring a possessory title to the premises were incorrect; but it is claimed that they were not applicable to the case, because that issue was not really in the case; and for that

reason such instructions were confusing to the minds of the jurors. We think this issue was fairly and fully raised by the defendant's evidence, and hence the instructions were properly given. But if this issue was not fully raised, the plaintiff fails to show that giving correct instructions thereon was legal error causing him injury, which is necessary to entitle him to a reversal of the judgment, and a trial *de novo*.

II. Nor do we discover legal error in the instructions of the court upon the subject of the defendant's adverse possession and occupancy of the premises, defeating, as to him, the operation of the plaintiff's deed thereof. When the defendant took possession, the premises were owned by Levine Hard, from whom both parties claim title, or right to title. The Montgomery mortgage, under which the plaintiff derives his title, was given several years after the defendant went into actual possession of the demanded premises. The court told the jury, that if the defendant was in actual adverse possession of the premises when the Montgomery mortgage was given, it would be void as to him; "because the statute provides—R. L. s. 1953—that deeds, leases, and other conveyances of land shall not have effect to convey such land as against an adverse claimant, his heirs or assigns, if at the time of the delivery thereof such land is in the actual adverse possession of the person claiming possession to the same adversely to the grantor." It defined the possession that was necessary to thus operate, "as actual, visible, open, notorious, and hostile, under a claim of ownership as against the grantor." This is a full statement of the law in regard to such adverse possession, and its effect upon a conveyance made pending such possession. The court told the jury that such possession was notice to the purchaser of the rights of the possessor. The defendant does not contend that this is an erroneous statement of the law in regard to such possession; but contends that it was erroneous in this case, because the plaintiff's

testimony tended to show that upon inquiry of the defendant, subsequently to acquiring his rights under the foreclosure of the Montgomery mortgage, the defendant did not claim to own said premises. But the defendant squarely denied making any such concession. It is true that the purchaser, by such possession, is not put upon inquiry of anything which he would not have learned if he had duly and fully inquired of the person in possession, in regard to the rights he claimed in the premises which he was thus occupying. The instructions of the court do not leave the jury to find that the plaintiff would be affected by any knowledge in regard to the character of the defendant's possession, which he would not have learned by due inquiry of the defendant. The fallacy of the plaintiff's contention on this point is in assuming that, upon due inquiry, he would have learned only what he claimed by his evidence that he did learn by subsequent inquiry. The jury must have found, under the instructions, that if the plaintiff had made inquiry of the defendant when he took his title, he would have learned that the defendant claimed to be in possession as equitable owner. The plaintiff intimates, though he does not fairly claim it, that it was enough for him to inquire of Levine Hard, the grantor. The rule is inflexible that the inquiry must be made of the person who is holding the premises adversely to the grantor. The grantor would not have an interest to disclose such adverse holding, if he knew of it.

III. The court told the jury, in substance, that if the defendant in 1865 went into possession of the premises under such an arrangement and agreement with his father as his evidence tended to show, and that he thereupon erected a house on the premises at his own cost and expense, and commenced to occupy and keep the same as his own for a home for himself and family, a homestead right attached at once to said premises, which the defendant could not state away nor defeat by acknowledging himself

a tenant of the plaintiff, and which could only be defeated by the joint deed of himself and wife. The defendant's evidence tended to show that in 1864 his father had a perfect title to the farm of which the demanded premises were a small part, and being under a temporary disability, the defendant went to carry on his father's farm and business on shares; that they had certain negotiations in regard to the defendant's taking a permanent interest in his father's business, and that in the fall of that year it was agreed that the father should give the defendant the piece of land in question to build a house upon, in which the defendant was to reside with his family; that in accordance therewith the father staked out the piece, and agreed to convey it to the defendant; that the fences were moved to the line staked out, and the defendant went on and erected a house thereon at his own expense, and had ever since occupied the same, as his own, for a home for himself and family, actually occupied them, except for about a year when he was away for a temporary purpose; that during this absence they were rented by him; and that the giving of the deed had been spoken of several times, and at one time a deed had been prepared by the father, which would have been executed but for a desire to change the line a very little by the defendant, and which the father after examination agreed to, but the fences ever remained where first placed.

Upon these facts the plaintiff contends that the instructions of the court were erroneous in two respects. He contends that the premises were a voluntary gift by the father, and that a court of equity would not decree specific conveyance of the premises; and that the defendant could not be said to have an equitable homestead in premises which a court of equity would not order to be conveyed to the donee. It is true that courts of equity do not enforce mere voluntary, unexecuted gifts. Until the gift is duly executed by delivery or conveyance it rests in a promise, for which

there is no consideration. In such case there is always a *locus pœnitentiæ* to the promising donor. The plaintiff has cited several cases of this kind, where the subject for donation was real property. We have no doubt of the soundness of these decisions. But the authorities cited by him show that where the promised donee has been allowed to go into possession of real estate, under the promise of a voluntary conveyance thereof, and made valuable improvements, equity will decree that he has a lien on the premises for such improvements, and will not allow the donor to retake possession without making full compensation for such improvements. It is questionable whether such a lien would not serve as the foundation for an equitable homestead right in the premises under the decisions of this State. *Morgan* v. *Stearns*, 41 Vt. 398; *Doane* v. *Doane*, 46 Vt. 485.

It is not unfrequently that a court of equity orders a reconveyance of an executed voluntary conveyance of property where subsequently the donor's circumstances have changed, and it has become necessary in order to provide the donor with a comfortable support. Rarely, if ever, will a court of equity decree a specific performance of a promise to make voluntary conveyance of real estate, although the expected donee has been put in possession and made valuable improvements upon the premises. Neither will a court of equity allow the expected donee to be ousted from the premises, until fully compensated for such improvements. But we need not much concern ourselves with the subject of voluntary conveyances, or what a court of equity will do or refuse to do in regard to such promised conveyances. None of the plaintiff's requests brought that subject to the attention of the County Court; besides, the defendant's evidence tended to show a consideration for his father's promise to convey the land; in short, that the father agreed to convey to the defendant the demanded premises as a part of the negotiations whereby the defendant was to take a permanent interest in the father's busi-

ness. The court throughout the charge put the defendant's right to a homestead in the premises upon the contingency that the jury found the facts to be such as his testimony tended to show. These facts, if found true, disclosed a legal consideration for the father's agreement to convey to the defendant the premises on which to build himself a house for a home for himself and family while thus engaged in business with the father. The demanded premises were then but a small piece of land of little worth. Now that the defendant has been allowed to go into possession and erect a house thereon at a very considerable expense, the promise of the father to convey, being, on the theory of the charge for a consideration, he has and has had, ever since the erection of the house, the right to have a court of equity decree that the father specifically perform his agreement by making conveyance. But the plaintiff further contends that, conceding that the defendant had a homestead right in the premises, the wife had but an inchoate right therein, that was liable to be defeated by acquiring another homestead, or by permanently abandoning it with his family; and that the husband could defeat himself and family of all right therein, by stating to the plaintiff about the time of his purchase, that he claimed no right therein, or by becoming a tenant thereof to the plaintiff. We do not, under our statute, think this contention is sound. The statute is explicit—R. L. s. 1904—that: " No homestead nor any *interest* therein shall be conveyed by the owner thereof, if a married man, except by way of mortgage for the purchase money thereof, given at the time of such purchase, unless his wife joins in the execution," etc. To hold that he could relinquish such a homestead by verbal statement, or by acknowledging himself a tenant, would be to repeal the statute by implication. What he might do with it, when it ceases to be a homestead, by abandonment or by the purchase and use of another homestead, has no application to the facts of this case, which show that during all the time

he was occupying and keeping the premises as a homestead.

IV.   The plaintiff further contends, that, on the conceded facts, he was entitled to a verdict and judgment for the excess of the premises above the homestead.   The plaintiff had become vested with the interest therein, which the defendant had conveyed by his sole deed to Mary Houston, which the court construed to convey all his interest in the demanded premises above the homestead.   The evidence also tended to show that the whole premises were worth about $800, while the homestead can only exist to the value of $500.   He contends that the court should have taken an indefinite verdict for the plaintiff, and then proceeded under the statute to have the homestead severed and set out, and have rendered judgment for what there was left, by metes and bounds.   We do not think that this was feasible. The judgment would then be on something very different from the declaration or verdict, both of which have uniformly, in actions of ejectment, been required to describe the premises with such accuracy and certainty, that the same being incorporated into the writ of possession, the officer executing it could put the plaintiff into possession of the exact, or exact fractional, portion of the premises for which recovery was had.   It is true, the plaintiff recovers according to his right in such cases, and may recover only a portion of the premises described in his declaration; but it must be for some definite proportion or parcel thereof.   In the case at bar, the verdict must be indefinite; because it could not be known what particular part would be set out for a homestead, and what part, if any, the plaintiff might be entitled to, when the homestead was severed.   We do not think the statute—R. L. s. 1907—intended to apply, or is applicable to a jury trial, where, intervening the verdict and the judgment, the homestead must be set out; and the proceedings setting it out must be incorporated into the verdict, to determine the judgment and the writ of possession

which may issue thereon. Under this section, the commissioners appointed by the court are to *appraise* and set out the homestead; so that it would be impossible for the jury to value the whole premises and return a verdict for such a fractional part thereof as the excess above the homestead, as found by them, might bear to the whole value of the premises. The court, therefore, did not err in refusing to allow a recovery for the excess, inasmuch as, under the statutes, such excess could not be lawfully determined by the jury.

V. The plaintiff excepted to the rulings of the court as to the admissibility of certain classes of testimony. After finding that the court was correct in the law of its charge to the jury, we are sorry to be compelled to say, we think it clearly erred in admitting the testimony of F. B. Davis, so far as excepted to. This witness was allowed to testify, " that it was generally reputed in the vicinity of the premises that the house in question was Seymour's house." We know of no rule of evidence that would allow the admission of this class of evidence. Titles to real estate cannot be established, nor lost, by general reputation, as to the ownership, in its vicinity. Such evidence is not the best evidence. The law provides for records as such evidence. Besides, it is wholly misleading. Nothing is more common than to speak of a house, occupied by a person in whatever capacity, as the house of such person, far from meaning thereby that he is the owner. But it is said this was admissible, on the ground that it tended to show that he was occupying it under a claim of right. Under the claim of what right? It is wholly misleading in regard to what right. Moreover, the witness did not pretend that this reputation came from the defendant. It was mere neighborhood talk at most. It is further said by the defendant that it was immaterial. It was on a point in issue, whether the defendant's occupancy was under a claim of right, or ownership. Its tendency was injurious to the plaintiff. What influence

.it might have had with the jury it is impossible to determine; nor will this court attempt to determine, when it is clearly of an injurious tendency. For this error the judgment of the County Court must be reversed. The other exceptions in regard to the admission or rejection of testimony, we think, were not well taken.

The judgment of the County Court is reversed and the cause remanded for a new trial.