**In re James T. SOTER and Jill Y. Soter, Debtors.**

**Bankruptcy No. 82–101.**

United States Bankruptcy Court, D. Vermont.

Jan. 17, 1983.

Marc E. Wiener, Burlington, Vt., for debtors.

Douglas J. Wolinsky, Burlington, Vt., Trustee, pro se.

Richard A. Lang, Jr., Burlington, Vt., for Chittenden Trust Co., a secured creditor.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The issue in this case is whether the debtor, Jill Y. Soter, is entitled to a homestead exemption in certain property which she is purchasing under a contract of purchase and sale. Her claim is made under Schedule B–4 as follows:

"Debtor Jill Y. Soter's interest in contract of sale of Orchard Terrace property, Winooski, Vermont under Homestead Exemption $25,000.00".

This claim is resisted by both the Trustee and secured creditor, Chittenden Trust Company.

## THE FACTS

James T. Soter and Jill Y. Soter, husband and wife, but separated, filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on May 18, 1982 and they gave their addresses as Rollin Irish Road, Milton, VT 05468 and 138 Osgood Hill Road, Essex Center, VT 05452, respectively.

The petition was first signed by the debtor, Jill Y. Soter, on March 18, 1982, at which time she was residing in Essex Center, VT and all her personal belongings were there. However, on that date the husband, James T. Soter, was not filing with his wife but he subsequently decided to join in the petition and signed it on May 14, 1982.

After Debtor, Jill Y. Soter, signed the petition on March 18, 1982 she started negotiating for the purchase of a house and she did, in fact, on April 2, 1982 enter into a written agreement with Jeanne M. Monette for the purchase of a house on land and premises known and designated as 43 Orchard Terrace, Winooski, Vermont for the sum of $50,000.00 with a cash deposit of $2,000.00 having been made upon the signing of a certain Deposit Receipt and Sales Agreement, dated March 25, 1982 and a cash payment of $23,000.00 made upon the execution of the agreement on April 2, 1982. This deposit and payment totalling $25,000.00 were obtained by debtor, Jill Soter, from relatives.

This agreement for purchase and sale of the house and premises at 43 Orchard Terrace, Winooski, Vermont provided for payment of the balance of the purchase price of $25,000.00 by the assumption of a mortgage to the Burlington Savings Bank by Debtor, Jill Y. Soter, of $16,206.90 and the execution and delivery by Soter to seller, Monette, of a promissory note of $8,793.10. It contained other provisions including the following:

"7. The Seller has executed a Warranty Deed and Vermont Property Transfer Return conveying title to said property to Buyer even date herewith, copies of which are attached to this Agreement. Said documents shall be held in escrow by Marc E. Wiener, Esquire, of Burlington, Vermont, as Escrow Agent, until full payment of all Buyer's obligations to Seller under this Agreement and Buyer executed a hold harmless agreement to Seller for the Burlington Savings Bank mortgage. Upon full payment of said obligations and delivery of hold harmless agreement, Seller authorizes said Escrow Agent to deliver the fully executed documents to Buyer."

Debtor, Jill Y. Soter, moved to the Orchard Terrace property in Winooski, Vermont on or about April 18, 1982 on which date she took all her household goods to these premises. She continued to occupy the house there after April 18, 1982 and was living at the Orchard Terrace, Winooski, Vermont on the date on which she filed her petition for relief i.e. May 18, 1982.

Prior to her moving to the Winooski, Vermont property the debtor, Jill Y. Soter, did occupy as a homestead the premises at 138 Osgood Hill Road, Essex, Vermont. This property was purchased on May 18, 1973 by this debtor and her husband on which date they executed a mortgage to the Farmers Home Administration for $21,000.00. Sub-

sequently, both debtors did on August 18, 1977, July 5, 1979 and May 2, 1980 execute and deliver to Chittenden Trust Company 3 mortgage notes in the sums of $18,000.00, $50,000.00 and $30,000.00, respectively. These notes were secured by 2 mortgages on the Osgood Hill Road property dated July 5, 1979 and August 18, 1979. The debtors defaulted in the payment of these notes and on April 21, 1982 Chittenden Trust Company filed a Complaint of Foreclosure.

## DISCUSSION

Debtor, Jill Y. Soter, has claimed exemptions under the laws of the State of Vermont including a homestead in the Winooski, Vermont property. Title 27 of Vermont Statutes Annotated Sec. 101 provides as follows:

"The homestead of a natural person consisting of a dwelling house, outbuildings and the land used in connection therewith, not exceeding $30,000.00 in value, and owned and used or kept by such person as a homestead together with the rents, issues, profits and products thereof, shall be exempt from attachment and execution except as hereinafter provided."

Sec. 101 does not vest in a natural person the absolute right to a homestead exemption but it is qualified by the words, "except as hereinafter provided". This exception is spelled out in 27 V.S.A. § 107 which reads as follows:

"Such homestead shall be subject to attachment and levy of execution upon causes of action existing at the time of acquiring the homestead, except as otherwise provided in this chapter. For that purpose, such time shall be the date of the filing of the deed of such homestead in the proper office for the record of deeds."

Debtor, Jill Y. Soter, was involved in two homesteads i.e. the one that she acquired with her husband at 138 Osgood Hill Road, Essex, Vermont on May 18, 1973 and the one she is claiming in the Winooski property under the agreement of purchase and

sale. If her claim is allowed she will have acquired a new homestead which would be subject to the provisions of 27 V.S.A. § 109, viz:

"When a person acquires a new homestead, the prior homestead shall be liable for his or her debts and may be conveyed by him or her like other real estate. *Such new homestead shall not be liable for causes of action against him or her to which such prior homestead would not have been liable*, if such new homestead is acquired with the consideration derived from the sale or other disposition of such prior homestead, or with other means not derived from the property of such person." Underscoring supplied.

The trustee and Chittenden have jointly objected to any homestead exemption in the Winooski property. They contend that the debtor could not acquire any homestead until the deed is recorded.

Chittenden relies on Sec. 107, *Gilson v. Parkhurst*, 53 Vt. 384, *Lamb v. Mason*, 45 Vt. 500 and *West River Bank v. Gale*, 42 Vt. 27. It emphasizes that the foregoing support the rule that a homestead is "acquired" only on recording of the deed to the premises in the Town Land Records "and not before". Chittenden misreads both the statute and the cited cases. Sec. 107 does not fix the time for the acquiring of a homestead. The beginning words "Such homestead" in Sec. 107 presupposes the existence of a homestead which may be created and exempted under Sec. 101 of Title 27. The more logical interpretation of Sec. 107 is that it fixes the time at which existing causes of action shall make the homestead subject to attachment and levy of execution i.e. the date of the filing of the deed of such homestead. Likewise in both the Lamb and West River Bank cases, supra, cited by Chittenden the Court held that under the statutes of this state the homestead of a debtor was exempt from attachment upon debts contracted after the filing of the deed of the homestead for record in the town clerk's office and before the occupation of the premises by the debtor as a homestead. Again these cases support the proposition

that the intent of the statute is to fix the time for making certain claims subject to attachment and levy rather than, as claimed by Chittenden, the date of the acquisition of the homestead by the debtor. This conclusion is further supported by *Gilson v. Parkhurst,* 53 Vt. 384, 388 cited by Chittenden and in the very language quoted by it, viz.:

"In *West River Bank v. Gale,* 42 Vt. 27, it is said in the opinion, delivered by PIERPOINT, Ch. J., that the statute 'exempts the homestead from attachment on all debts *except such as have an existence at the time the deed thereof is left for record.*'" Underscoring is in italics.

■ The argument by Chittenden that a homestead can only be "acquired" on the date of recording of the deed thereto presupposes that the debtor may acquire a homestead only in property to which he holds legal title. Such a limitation is not tenable. As a general rule the claim of homestead is sustainable in respect of the premises held by the claimant as equitable owner. Accordingly, the decisions hold that except as against the right of the vendor and others having superior rights in the land itself, a vendee in possession of land under a contract of purchase may assert the homestead right. 40 Am.Jur.2d 153 § 56. And it has been held that the interest of an oral contract vendee who went into exclusive possession and made improvements has been deemed sufficient for homestead purposes. *Atkins v. Schmid* (Tex.Civ.App.) 129 S.W.2d 412.

■ This jurisdiction recognizes the existence of a homestead right in an equitable ownership. See *Morgan v. Stearns et. als.,* 41 Vt. 398. In this case the record title to a farm was in the brother of the defendant and one Spaulding for the purposes of security but the defendant and his wife had lived on it for twelve years. It was conveyed by the defendant and his wife to trustees subject to the payment of certain notes the last of which was given for the true balance on the purchase of the farm, and was bona fide designed to secure the value of the homestead interest to the de-

fendant's wife who refused to convey unless she could have it secured to her. With this situation the Court said at page 407:

"We think upon these facts the defendant had a homestead interest in the property, and that the case, in this respect is within the reason and spirit of the statute creating it. *The essential condition of this right and interest is ownership and occupancy by the husband and family and the statute applies to an equitable as well as a legal ownership;* an incumbered as well as an unincumbered estate. 'There is nothing in the nature and policy of the exemption (of the homestead) which makes it any more applicable to' the one than the other, and the act of 1855 (Gen. Sts. 456 § 5) as held in *McElroy et. al. v. Bixby Admir.,* 36 Vt. 254, 'that after the homestead is set out to the widow and minor children, they shall be respectively siezed of the same estate in such homestead as that of which such housekeeper or head of family should have died, seized, strongly implies that it was the design of the statute to secure a homestead right in lands to which the title of the husband and father was limited and special'". Underscoring supplied.

Likewise in this jurisdiction the Supreme Court has recognized that one may have a homestead in a house which he has erected on land occupied by him under a verbal agreement to convey to him, but such an agreement as a court of equity would decree to be performed. *Canfield v. Hard,* 58 Vt. 217, 2 A. 136.

■ The foregoing authorities clearly support debtor, Jill Y. Soter's, claim that she acquired a new homestead under her contract as vendee for the purchase and sale of the Winooski property with Jeanne M. Monette as vendor dated April 2, 1982. Therefore, she is entitled to a homestead exemption for the down payment of $25,-000.00 which is less than the statutory allowance of $30,000.00. Under § 109 this new homestead is not liable for any causes of action to which her prior homestead would not have been liable if such new homestead was acquired with the considera-

tion derived from the sale or other disposition of such prior homestead or with other means not derived from the property of such person". It has been established that this debtor obtained the proceeds for the $25,000.00 down payment from relatives.

■ Chittenden seems to misconstrue the meaning of § 109. It contends that any debts and obligations for which the debtor was liable prior to the acquisition of the new homestead are automatically transferred to it. The double negative in the language of the statute is apparently responsible for this misconception. The intent and interpretation of the language used is to transfer to the new homestead only those obligations with which the first homestead was chargeable. These obligations are defined under § 107 as causes of actions existing at the time of acquiring the homestead. At the time that debtor, Jill Y. Soter, and her husband acquired their first homestead in the Essex Center, Vermont property they were not indebted to Chittenden. The three mortgage notes in the sums of $18,000.00, $50,000.00 and $30,000.00 were executed on August 18, 1977, July 5, 1979 and May 2, 1980, respectively, whereas the debtors acquired their first homestead in the Essex, Vermont property on May 18, 1973, well before the notes were executed. Hence, the first homestead was not chargeable with these obligations. Since the first homestead could not be impressed with these debts under § 107 the second homestead of debtor, Jill Y. Soter, was not chargeable with them under the provisions of § 109 which specifically makes the second homestead chargeable with only those causes of action for which the first homestead was liable.

It is true that the debtors waived their homestead exemption when they executed the 2 mortgages on the Osgood Hill Property in Essex Center, Vermont on July 5, 1979 and August 18, 1979 but this waiver related only to the real estate as security for the mortgage indebtedness and not to any deficiency arising after default and foreclosure of the mortgage commenced by Chittenden on April 21, 1982. Such deficiency is dis-chargeable under the debtors' petition for relief filed under Chapter 7 of the Bankruptcy Code. The obvious conclusion is that Chittenden's objection to the claimed homestead exemption must be overruled.

■ The trustee makes the ingenious argument that he could assume or reject the agreement of purchase and sale for the Winooski property as an executory contract and since he did not assume it within 60 days, it is, under § 365(d)(1) of the Code, deemed rejected. He asserts that by virtue of this rejection the interest of the debtor in this property is terminated and he is entitled to pursue the property for the benefit of the general creditors. This conclusion is fallacious.

As the trustee points out the Code has made no attempt to define the term "executory contract". However, the legislative history which pertains to § 365 which deals with executory contracts and unexpired leases recites the following:

"Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. A note is not usually an executory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory." House Report at 347, Senate Report at 58.

The foregoing definition of an executory contract is substantially the same as that of Professor Countryman of Harvard Law School, recited in the case of *In Re Sun Ray Bakery, Inc.,* 5 B.R. 670, 672 (Bkrtcy.1970) as follows:

"an executory contract is one 'under which the obligation of both the bankrupt and the other party to a contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other' ".

Applying the test laid down in these definitions it is clear that the agreement of sale and purchase under which the debtor claims

a homestead interest is not an executory contract. The vendor had performed everything required of her. She had even delivered the deed conveying the property to Attorney Wiener who was to deliver it to the debtor for recording upon her payment in full of the balance of the purchase price. This was a ministerial act to be performed by him. The only substantive obligations to be performed under the agreement were those chargeable to the debtor as vendee.

The trustee argues that the parties are obligated to pay Attorney Wiener as escrowee his usual hourly rates for services rendered and that constituted an obligation to be performed by the vendor thereby creating nutuality of obligations. This agreement fails for the reason that this obligation for payment runs to the Attorney as a third party and not the debtor as vendee.

■ Even assuming that the agreement is an executory contract which has been rejected by the trustee he still is not entitled to recover the $25,000.00 down payment. A rejection does not result in a waiver of any interest the debtor had under equitable or state law. *In Re Mark Thomas Vertich*, 5 B.R. 684 (Bkrtcy.1980).

■ The debtor on the date of the filing of her petition for relief had already established a homestead interest in the Winooski property. An estate is created under the Code as of that date. This is the critical time as of which the property comprising the estate is to be determined, and the rights of others connected with the proceeding adjusted. 4 Collier 15th Ed. 541–21 § 541.04. It follows that any right of the trustee in the estate of the debtor would be subject to the established homestead exemption of this debtor which under Vermont law may be up to $30,000.00 in value.

In the final analysis the tendency of the courts is to construe the homestead exemption statutes liberally. This is clearly expressed in the annotation in 74 A.L.R.2d 1358, § 2 as follows:

"In most jurisdictions the inclination of the courts has been to construe homestead provisions of constitution and statute very liberally in favor of homestead claimants; in fact, to hold that any sort of right or interest in premises, where of a nature to support immediate possession, is sufficient for a homestead claim. Such ordinarily is the position taken notwithstanding in granting and defining homestead rights the constitution or statute makes use of the word 'owner', or an equivalent. Great attention is given to the benevolent, and no doubt socially sound, purposes of the homestead laws. The fact that one's claim upon property he occupies with his family as a home is slender or dubious appears to strengthen the view that the family ought not to be thrown out of it at the demand of a mere general creditor."

As early as 1829 our Vermont Supreme Court recognized the necessity of construing exemption statutes liberally. See *Leavitt v. Metcalf*, 2 Vt. 342, 343, where the Court said:

"The question depends upon a correct construction of the statute, which must be such as to carry into effect the mind and will of the legislatures at the time of passing the act. It is properly a remedial statute, evidently intended to prevent families from being stript of the last means of support, and left to suffer, or cast as a burden upon the public; and to rescue them from the hands of unfeeling creditors; and the better to enable such poor debtors to satisfy the just demands against them. The statute must be liberally expounded in favor of humanity—

"As people emerge from the barbarious to the civilized and refined states, they are less cruel toward the unfortunate, and hold out stronger inducements to industry and economy, and are more reluctant to permit the creditor to torture his poor debtor, or reek his vengeance, without a prospect of obtaining his debt."

## ORDER

Upon the foregoing,

IT IS ORDERED as follows:

1. The objections of Chittenden Trust Company and the trustee to the homestead

exemption of debtor, Jill Y. Soter, is overruled.

2. Debtor Soter's homestead exemption of $25,000.00 in the Winooski property is allowed.