FRANK W. GOODALL v. RUBY BOARDMAN, CARRIE E.
BOARDMAN, CHARLES E. BOARDMAN, WARD S.
BAILEY, H. S. TOLMAN, Exr. of MOSES
BOARDMAN, Deceased.

*Homestead. Mortgage of. Parol Agreement. Estoppel.*

1. One cannot be the owner of two homesteads *at the same time.*
2. When one owns two farms in different towns, but lives and makes his home with his family on one,—the one first acquired,—although he intends to sell it, and move on to the other as his home, the one first acquired and so occupied, contains the homestead; and it is not necessary that the wife sign with the husband a mortgage deed of the other farm to give such deed validity.
3. When a mortgagee agrees in writing that the mortgagor can have till a certain time to pay the mortgage debt, on condition that if he fails to pay, he shall deed, and this agreement is extended by parol, a petition, brought to foreclose before the expiration of the extended time, is premature, and will be dismissed.
4. If the homestead is set out by order of the Probate Court, the mortgagee,—not being a party to the proceedings,—is not estopped from denying the widow's right thereto.

THIS case was heard upon pleadings,—petition and answers,—and the report of the special master, Hon. Henry H. Powers. The court, *pro forma*, adjudged and decreed that the said Ruby Boardman is not entitled to any right of homestead in the mortgaged premises, described in complainant's petition; it was also adjudged and decreed that the complainant's motion for an execution against defendant Ruby Boardman for the amount of costs, caused by the litigation of her claim for a homestead, is denied. The cause was heard at the February Term, 1880, W. G. VEAZEY, Chancellor.

The following is the report of the master:

PETITION OF FORECLOSURE.    ABSTRACT OF ANSWER OF H. S.
TOLMAN.

Answer set forth that petitioner resides in Bennington County; that the land is located in Lamoille County; that this defendant resides in Orleans County; and asks that bill be dismissed for the reason that suit is not brought, and made returnable in the county

where the land is located. That he is executor of Moses Board-man's estate, late of Wolcott, deceased, and that petitioner made an agreement with this defendant. (Copy of agreement is at-tached to master's report.) Answer insists that said agreement was made for a good consideration, and is binding on petitioner; and that petition is prematurely brought, and should be dismissed; that this defendant has at all times been, and now is, ready and hereby offers, to fulfill said contract, and tenders a deed under said contract, and asks court to decree that petitioner be held to his said contract. Avers that there has been a homestead set out to Ruby Boardman, widow of said Moses, from the real estate set out in petition, and this defendant is willing that petitioner may have the balance of said real estate with which to pay said mort-gage. Avers that there has been a large amount of extra interest paid by Moses Boardman in his lifetime, to petitioner, and if de-ducted, the balance of the real estate ought to be worth enough to pay petitioner his claim.

#### ABSTRACT OF ANSWER OF RUBY BOARDMAN.

Answer avers that the real estate lies in Lamoille County; that defendants reside in Lamoille County, except Tolman and Bailey, who reside in the counties of Orleans and Caledonia; that peti-tioner resides in Bennington County, where the suit is brought. Insists that same should have been brought in Lamoille County, where the land is located. Admits that Moses Boardman exe-cuted the mortgage, but says that she did not sign same, nor con-sent that homestead might be included in mortgage, and that same never was in said mortgage. Avers that during the settlement of her husband's estate, this defendant applied to the Probate Court for the district of Lamoille, to have a homestead set out of said real estate, and that commissioners did set one out to her, the re-port of whom was accepted and recorded by said court; and she claims that she has a legal and valid title to said homestead, but makes no other claim to said real estate than the homestead so set out to her. Insists that as matter of law and equity, she had had a valid and legal homestead in said premises, which took priority to petitioners' mortgage, and asks court to allow and con-firm the homestead so set out by said Probate Court. Avers that her said husband, Moses, during his lifetime paid petitioner a large amount of extra interest, which, if all deducted from what petitioner now claims to be due on his mortgage, will reduce same so that the balance of the real estate, after taking out the home-stead, will be sufficient in value to pay said mortgage. Avers that petitioner entered into a contract with defendant Tolman,

executor of said Moses' estate mentioned in said Tolman's answer, which she makes part of this answer.

### MASTER'S REPORT.

Moses Boardman, deceased, executed the mortgage in this suit sought to be foreclosed, on certain lands in Wolcott on the 17th day of May, 1871. Ruby Boardman is the widow of said Moses, and did not join in said mortgage. Said Moses purchased said mortgaged premises in Wolcott of one Bernard Powers, March 22, 1869, and took a deed of the same on that day. At the date of the purchase of the Wolcott property, which consisted of a farm with a dwelling house and the usual outbuildings thereon, there was an outstanding incumbrance thereon, the payment of which said Boardman assumed as part payment of the purchase money, and the money borrowed by Boardman of the orator was used by Boardman to pay off a part of this outstanding incumbrance.

On March 22, 1869, the date of the purchase of the Wolcott farm, said Moses Boardman with his wife, said Ruby, and their family, lived on a farm in Greensboro, on which was a dwelling house and customary farm buildings, and wherein said Boardman had a homestead estate, and said Boardman with his family had resided on said Greensboro farm, for several years prior to the purchase of the Wolcott farm. But said Boardman had been anxious to sell the Greensboro farm for some time, and at or about the date of the purchase of the Wolcott farm, whether a few days before or a few days after did not appear, Boardman had negotiated a sale of the Greensboro farm, as he supposed, and a time for making writings had been fixed. On the appointed day, however, for executing the deed, the purchaser did not appear, and the sale of the farm failed.

On the 26th day of March, 1869, the trade, last referred to, having failed, Boardman offered the Greensboro farm and certain personal property thereon, for sale by printed handbills and by notice in the newspapers, he and his family then living thereon as he had before done.

When Boardman purchased the Wolcott farm he intended to make his future home thereon, and thought he could soon sell the Greensboro farm, but was unable to do so, until several years after the date of the orator's mortgage.

It thus appears that from the date of Boardman's purchase of the Wolcott farm, down to the date of the orator's mortgage and for six or seven years after, Boardman owned both farms,

and the contention is whether on May 17, 1871, Boardman's homestead was in the Greensboro or in the Wolcott estate.

After the purchase of the Wolcott farm and down to the fall of 1871, Boardman carried on both farms in the following manner :

In the spring of 1869 he came to Wolcott with his wife, bringing a bed and such articles of household goods as would be necessary for the use of himself and wife, and some provisions, and remained long enough to do the spring's work on the farm, occupying the house, and his wife keeping the house in the ordinary way ; but they brought with them only a limited outfit of provisions and furniture, and intended as soon as the spring's work was done, to return to Greensboro, which they did. do. During this absence of Boardman and wife at Wolcott, the Greensboro farm was carried on by Boardman's hired help, and his household kept up in all respects as before. His children remained in Greensboro, and he and his wife returned to Greensboro occasionally, to stay over Sunday while doing the spring's work at Wolcott. In haying and harvesting, Boardman came to Wolcott for the temporary purpose of doing that work, and either his wife or oldest daughter came with him, to do the cooking and take care of the house, and he occupied the house in the same way as in the spring, the furniture brought to Wolcott in the spring being left there, when Boardman returned to Greensboro. On finishing haying, and again on finishing harvesting, in 1869, Boardman and wife returned to the Greensboro farm, which, during their absence at Wolcott on these several occasions, had been carried on as usual. On all the occasions referred to, when Boardman and wife went to Wolcott, they intended to return to Greensboro as soon as the work they went to do was finished, and they kept their home in all respects, at Greensboro, the same as before the Wolcott purchase, except their temporary absence at Wolcott as before stated. Boardman voted in Greensboro at the freeman's meeting in 1869, and in 1870. He paid a poll tax in Greensboro in 1869, 1870 and 1871. The hay cut on the Wolcott farm in 1869 was sold off the farm. In the winter of 1869–70, Boardman and wife were on the Greensboro farm, though he may have been at Wolcott for a day, to look after his interests there. In 1870 Boardman came to Wolcott to do the spring's work, haying and harvesting in the same way, substantially, as he had done in 1869, his wife or daughter coming with him, and carrying on the Greensboro farm as usual, and each time intending to return to Greensboro, as soon as the work at Wolcott was completed. In the winter of 1870–71 he drove some of his stock from Greensboro to Wolcott, and hired a man to feed it from the hay cut at Wolcott

in the summer of 1870, Boardman, with his family, living through the winter on the Greensboro farm.  In 1871 Boardman came to Wolcott again, as he had done in 1869 and 1870, to do his spring's work on the Wolcott farm, bringing his wife or daughter to keep house, and intending to, and actually returning to Greensboro, as soon as this work was done.  While at Wolcott doing his spring's work in 1871, Boardman executed the orator's mortgage, which I refer to, and in which he declares his homestead to be in Greensboro.  Boardman came to Wolcott and did his haying, and then returned to Greensboro in 1871, as he had done in 1869 and 1870. In the fall of 1871, Boardman came to the Wolcott farm with his family, and took the laborers on the P. & O. Railroad, then being built, to board, and continued to live in Wolcott and take boarders till the fall of 1872, and paying a poll tax in Wolcott on the list of 1872.  He returned to Greensboro with the family in the spring of 1873.  When Boardman came to Wolcott in the fall of 1871, he brought nearly all his furniture with him, and rented the Greensboro farm to a tenant for a year, the year expiring in December, 1872.  The Greensboro house was vacant through the winter of 1872–3.  A part of the house on the Wolcott farm was rented to a tenant in 1871, before Boardman moved there to take railroad boarders.  When Boardman returned from Wolcott to Greensboro, in the spring of 1873, he took his family and most of his furniture with him, and resumed his home there, as he had kept it prior to the fall of 1871.  He paid a poll tax in Greensboro on the lists of 1873, 1874 and 1875.  From the summer of 1869, to and including the summer of 1871, Boardman's children attended the common school in Greensboro.  After he came to Wolcott in the fall of 1871, until his return to Greensboro, his children attended school in Wolcott.  I find from the evidence, that, when Boardman bought the Wolcott farm, and ever afterwards until he sold the Greensboro farm on the 15th of November, 1876, he intended to make the Wolcott farm his home, but, that his purpose was not accomplished in fact, until after the execution of the orator's mortgage ; and that at the date of this mortgage Boardman was occupying the Greensboro farm as a homestead, though owning, and intending to occupy the Wolcott farm as a homestead as soon as he could sell the farm in Greensboro.  Mr. Boardman died in 1877, and the defendant Tolman was appointed his executor, and on the 22d day of May, 1878, the orator and said Tolman entered into the contract, hereto annexed.  I find that after this contract was executed, the parties to it verbally agreed that the time for the delivery of the deed from Tolman to the orator, therein mentioned, be extended to March 1, 1879 ; and

that said Tolman on the latter date executed the deed called for by the contract, and forwarded the same to the orator's solicitors at Bennington, Tolman then living in Greensboro, but that the orator declined to receive the same.

The counsel for Mrs. Boardman claimed that the execution of the contract precludes the orator from maintaining this suit; whether Mrs. Boardman can take any advantage or benefit of such a defense is submitted to the court.

By proper proceedings in the Probate Court for the district of Lamoille on the 5th day of October, 1878, a homestead to the value of $500 was set out to Mrs. Ruby Boardman,. in the mortgaged premises, and since that date she has been and still is in the occupancy thereof. Mrs. Boardman's counsel claimed, that this proceeding of the Probate Court is conclusive upon the orator, and that he cannot now question her right to such homestead. The orator in fact knew of her application to the Probate Court for such set-off of homestead, but had no notice from the Probate Court, or from Mrs. Boardman thereof, and was in no sense a party to the same. How far, if at all, this set-off affects the orator's rights here, is submitted to the court. Several objections to the admission of evidence were made by each party, but as I find all the facts reported, from evidence not objected to, and mainly from the testimony of Mrs. Boardman, it is not deemed material to note the objections. The question whether Mrs. Boardman, as against the orator, can claim a homestead in the Wolcott estate, is submitted to the court. The controversy is wholly between the orator and Mrs. Boardman, the other defendants making no defence. All which is respectfully submitted.

H. HENRY POWERS, Special Master.

COPY OF AGREEMENT.

Articles of agreement made and concluded by and between H. S. Tolman executor of the will of Moses Boardman, of Greensboro in the county of Orleans, on the first part, and F. W. Goodall, of Bennington in the county of Bennington, of the other part, witnesseth :

That said Tolman agrees that the debt of Mr. Goodall, on the 2d day of November, 1877, was twenty-one hundred and twenty dollars, against the estate of Moses Boardman, as appears by a mortgage note now held by Mr. Goodall, and signed by Moses Boardman. That in case said Goodall debt is not paid, or otherwise arranged, as hereinafter stated, before the first day of January, A. D. 1879, said Tolman is to deed the farm covered by said Goodall's mortgage, by an executor's deed excepting a mortgage

to Ward S. Bailey or Susan C. Cole, and a claim to the homestead (having first obtained a license) to said Goodall, on said first day of January, but not to give possession of said farm till March 1st, 1879. That said Tolman retains the right to sell said farm until the first day of March, 1879, and in case of a sale by him, said Goodall, on receipt of his debt and interest, or so much as by this agreement he is entitled to, shall re-deed the farm, but on the further condition that said Tolman is to pay all damages sustained by any tenant, to whom said Goodall shall rent said farm after January 1st, 1879, and before the first day of March thereafter; that as a part of this settlement and compromise, said Tolman releases said Goodall from all claims for extra interest paid him by Moses Boardman in his lifetime, and agrees to make no claim by independent suit or application on the note for any sum so paid; that the appeal from commissioners now pending in Lamoille County Court, may be discontinued at the April term of said court, without costs to either party.

That said Goodall agrees to take the farm on the terms aforesaid, in full of payment of his debt; that the appeal now pending, may be discontinued without cost to either party; that he will take no steps to have the commission opened to get his debt allowed; that in case of a sale of said farm by said Tolman as provided above, he will let his debt be paid by the purchaser as follows: All interest to be paid up to the day of sale, and the principal debt reduced to $1,700, and then said sum to be paid $200.00 per year at six per cent. annually, until extinguished, (security by way of mortgage, and insurance to remain as now); that said Goodall agrees, that, upon condition that said farm is otherwise cared for according to the rules of good husbandry, and upon condition that twelve one-horse loads of muck are drawn into the hog-pen, the hay may be sold from the farm, but no wood is to be cut, but such as needed for the ordinary family use.

Dated and signed as follows:

Greensboro, Vt., May 22, 1878.

H. S. TOLMAN, Executor of M. Boardman's Estate.

F. W. GOODALL.

In presence of A. B. COOK.

### SUPPLEMENTAL REPORT.

Pursuant to the foregoing order of the chancellor recommitting my report as special master filed in said cause September 8th, 1879, I submit the following report, in answer to the questions filed by defendants' solicitor:

Answer to 1st question. When Boardman and wife first came to the Wolcott farm their son came with them. They drew one load of furniture from Greensboro, consisting of two beds with the usual outfit of bedding, one looking-glass, one old cooking stove, taken from a shop at Greensboro, in which Boardman did his " tinkering," tea kettle and customary stove furniture, broom, mop and washtub, and three or four chairs, taking from the house in Greensboro such articles as could best be spared. These goods were never returned to Greensboro.

2. Boardman and wife, or Boardman alone, when not at work on the Wolcott farm, and while living in Greensboro, did come to Wolcott on three or four occasions in 1869 and 1870, to look after matters there, and stayed in the house on the premises over night, bringing their provisions with them.

3. When the house was rented, Boardman did reserve a room, and perhaps two rooms, to himself for his own use.

4. In the winter of 1869–70, Boardman bought and moved from Greensboro to Wolcott some lumber for finish boards, claiming that he was going to build a new house. It did not appear how much there was of this. In June, 1870, he employed Mr. Walton, to split some granite for underpinning, a door step and threshold for a house, which was drawn to Wolcott. A. W. Powers, a brother of Mrs. Boardman, and a practical housebuilder, made for Boardman a plan, and bill of lumber for a house in the early part of 1870. Boardman did make and set up a watering trough, and put in pipe for water at house and barn.

5. The orator's solicitors, Messrs. Gardner & Harman, by letter dated March 13, 1879, did notify Tolman that the orator would not accept his deed. It did not appear that orator went into possession under said deed.

All which is respectfully submitted.

H. H. POWERS, Special Master.

*Gardner & Harman,* for the orator.

The executor was properly made a party ; all interested in the accounting should be joined. *Noyes* v. *Sawyer,* 3 Vt. 160 ; *Merriam* v. *Barton,* 14 Vt. 501 ; *Wing* v. *Cooper,* 37 Vt. 169. The special master finds that Moses Boardman had his homestead in Greensboro. He could not have two homesteads ; it, therefore, follows that he alone·could mortgage the Wolcott farm.

*J. P. Lamson*, for defendant.

The petition, as to Tolman, was prematurely brought, and should be dismissed. The mortgage could not include the homestead, because the wife did not sign it. *Day* v. *Adams*, 42 Vt. 510 ; *Abell* v. *Lathrop*, 47 Vt. 375. The statute does not require it to be used, but kept. When disappointed in the sale of the Greensboro farm, he rented it as soon as he could. He never rented his Wolcott farm—only a part of the house for a short time, and then took the precaution to reserve rooms for his own use ; never abandoned, but kept it for his home. What Mrs. Boardman has done was by reason of the contract between Tolman and the orator. He fraudulently concealed his own claim from her. She knew she did not sign the mortgage. She knew what was in the contract between Tolman and the orator ; the homestead was excepted. She, by this set-out of the homestead, gets as good a title as a purchaser could have got. And if he had stood by and seen an innocent person purchase and pay for that homestead he would be estopped from setting up a claim to it. We say he is now estopped. *Cady* v. *Owens*, 34 Vt. 598 ; *Ivers* v. *Chandler*, 1 D. Chip. 48 ; *Wheeler* v. *Willard*, 44 Vt. 640 ; *Miller* v. *Bingham et als.*, 29 Vt. 82.

The opinion of the court was delivered by

POWERS, J. This is an ordinary petition to foreclose a mortgage. The defendant Ruby Boardman claims a homestead in the mortgaged premises.

The master's report shows that on the 17th day of May, 1871, Moses Boardman, then the husband of the defendant Ruby, by his sole deed executed the mortgage in question, upon a certain farm in Wolcott ; that at that date, Boardman and family were living on a farm in Greensboro, where he had lived for many years, and in which he had a homestead estate ; that on March 22, 1869, when he purchased the Wolcott farm, he expected to sell his Greensboro farm, and supposed he had a customer for it, and he bought the Wolcott farm intending to make his future home thereon ; that his expected sale of the Greensboro farm failed,

and thereafterwards until after the execution of the mortgage in question, he continued to own both farms ; all the while anxious to sell the Greensboro farm, and all the while intending as soon as that was sold, to permanently remove to the Wolcott farm ;—that during all this time he kept up his household in Greensboro, but carried on the Wolcott farm, going there from Greensboro with his wife, or daughter, and occupying the house there, while doing the work on the farm ; that these trips to Wolcott were for the temporary purpose of doing the work on that farm, occupying a few weeks in the spring, again in the summer, and again in harvesting.

Our statute, sec. 1, chap. 68, Gen. Sts. provides that the homestead " consisting of . . . . not exceeding five hundred dollars in value, and *used* or *kept* . . . as such homestead shall be exempt," &c. A later section forbids its alienation except by the joint deed of the husband and wife. The most that can be claimed from the facts reported, is, that at the date of the mortgage in question, Boardman had a homestead in Greensboro, then actually " used " as such by him, and another in Wolcott, then actually " kept " by him for future use. Boardman could have but one homestead. The homestead exemption in the Greensboro farm was earliest in time, and continues until it is abandoned for the new one. It was not abandoned, and the continued user of it, as the family home, determines its character as his homestead.

The defendant also claims that the agreement of May 22, 1878, between the petitioner and Mr. Tolman, executor of Boardman, estops the petitioner from now denying the defendant's claim to a homestead. This agreement was made after Boardman's death. If a homestead existed in the Wolcott estate, paramount to the petitioner's mortgage, it passed by the death of Boardman at once to his widow and minor children. Sec. 5, c. 68, Gen. Sts. The executor has no interest in, or control over the homestead, unless debts chargeable upon it exist. He has no power to convey it, and excepting it from his deeds, withdraws nothing from his grant.

All that Mr. Tolman undertook by this agreement to do, was not to prejudice the widow's claim to a homestead, by the settle-

ment of the matters in dispute between him and the petitioner. The agreement left the claim to a homestead to be determined between the defendant Ruby and the petitioner. This agreement was extended by parol; and this petition was brought before the expiration of the extended time. As to Tolman, therefore, the suit is premature; but this does not affect the right to maintain it against the other defendants.

The decree of the Court of Chancery denying the claim for homestead, and for a foreclosure against all the defendants except Tolman, is affirmed. As to defendant Tolman the petition should be dismissed with costs. The cause is remanded.