## Leo O. and Lucille B. Tromblay v. Edward A. and Helen Dacres

[376 A.2d 753]

No. 160-76

Present: **Barney, C.J., Daley, Larrow, and Billings, JJ., and Smith, J. (Ret.), Specially Assigned**

Opinion Filed June 7, 1977

*John B. Harrington* of *McNamara & Fitzpatrick*, and *Wool and Murdoch*, Burlington, for Plaintiffs.

*Gareth H. Caldbeck* of *Langrock and Sperry*, Middlebury, for Defendants.

**Barney, C.J.**  A one-year lease with an option to purchase has led to years of litigation. This action was brought in May of 1975 as an action for reformation and declaratory relief by the plaintiffs, who are the lessors under the original lease. Several court sessions concluded without disposition based upon stipulations or proposed settlement arrangements arrived at between the parties. In each case the proposed settlement fell through.

The hearing in the case now before this Court was adjourned for a week in the middle of taking testimony because of just such an attempted settlement. One of the principal contentions in dispute here is whether or not the final order under appeal was, in fact, a stipulated disposition.

The transaction revolves around two instruments. One was a purchase agreement relating to personal property consisting of farming tools and equipment. This agreement called for payments of $150.00 a month for twelve months beginning May 1, 1974, leaving a $6,600.00 balance payable on April 30, 1975. In the event the purchase was not completed, the plaintiffs were also entitled to retain any monthly payments already made.

Along with that purchase agreement, but separately executed, there was a lease agreement running for the same one-year period, May 1, 1974, to April 30, 1975. This was the lease of the farm premises involved at a monthly rental of $450.00, payable in advance. The lessors, the plaintiffs, retained the right to re-enter and retake the premises if any rental payment was not paid within thirty days of its due date.

The option provision is a separate section of the lease and reads in its entirety as follows:

> 15. LESSORS hereby give LESSEES the exclusive option of purchasing the above mentioned farm, exclusive of personal property, the option price being Seventy Five Thousand Dollars ($75,000). LESSEES will give notices to LESSORS, in writing, of intent to exercise this option within twelve months of the date of this lease agreement, and will pay the above mentioned purchase price according to the following schedule: $75,000 payable in 480 equal monthly installments, with interest running at

seven and one half percent (7½%) per year, the monthly payments, including principle [sic] and interest, to be Four Hundred Ninety Three and Fifty Six Hundredths ($493.56). The first monthly payment will be made on or before May 1, 1975, and there will be no penalty for prepayment of principle [sic]. Evidence of title shall be a warranty deed supplied by LESSORS. LESSEES will execute a promissory note and mortgage deed in the amount remaining on said option price at the time of closing.

On October 15, 1974, the Dacres sent a letter to the Tromblays notifying them that the Dacres intended to exercise the option provision of the lease. It is undisputed that the defendants have made the twelve monthly payments called for under the lease in the amount of $450.00. The lease does not provide that the rental payments for the one-year term of the lease apply on the purchase price of the farm in any way if the option is exercised. The option is clearly effective at the end of the lease. No payments called for in the exercise of the option have been made by the defendants.

The lawsuit in the case was brought April 28, 1975, just prior to the end of the lease. It alleged that the defendants were in default on the personal property agreement and that full performance of both the personal property agreement and lease agreement were prerequisites to the entitlement of the defendants to performance under the option. The Dacres, on the other hand, defended on the ground that the two agreements were separate. There is a certain irony in this, since the evidence developed the fact that at one point the Dacres were complaining that it was a breach of the original trade to put the two agreements in separate form, whereas the Tromblays were insisting on the division. Although illustrative of the numerous position changes by the parties during the course of the dispute, it does not affect the result reached in this case, as it turns out.

When the case finally had full hearing, the lower court's order disposed of the personal property agreement as a separate issue. It was conceded that the Dacres had not and could not carry out the purchase agreement, and so the trial court ordered the personal property listed therein returned to the plaintiffs. We find no error in this disposition.

The balance of the judgment order created the real controversy. It had two aspects. In the first one, the defendants were given the opportunity to pay into court the equivalent of 13 months' payment as called for under the option clause, plus taxes and insurance included in their obligation, all amounting to $8,260.90; they were to receive a warranty deed to the property set out in the lease. The plaintiffs were to receive a mortgage deed and promissory note covering the option purchase price, and were obligated to discharge a mortgage encumbering the property.

The second aspect represented the disposition in the event the Dacres did not take advantage of this opportunity to exercise their option. In that event the court ruled that the plaintiffs would be entitled to possession of the premises in their status as owners.

The manner of implementing the judgment is the basis of challenge here. The judgment recited above was announced at the close of the evidence after an in-chambers conference on Thursday, May 13, 1976. That oral notice of decision gave the Dacres until 4:30 p.m. the next day, Friday, May 14, 1976, to exercise their option and avoid a judgment returning the property to the plaintiffs. If the option was exercised, it was to be the responsibility of the Dacres' counsel to prepare the appropriate order in connection therewith. If the option was not exercised, counsel for the plaintiffs was to prepare the order.

The option was not exercised. An order reciting all that went on on May 13, 1976, including findings and conclusions, was prepared and filed on May 17, 1976. From this sequence of events, an argument has been advanced that the May 17, 1976, order is fatally defective because it orders an act to be done prior to its date of filing. This argument ignores the circumstances surrounding the making of the order.

In effect, on May 13, the defendants were informed that they were to have another opportunity to exercise the option, even though a year had passed without payment. There was nothing obligatory about it, but if they failed to avail themselves of that opportunity, judgment was going against them, which is what occurred. There was nothing that required the trial court to give them that option as a matter of law, and it supports no claim of error, particularly since it is a ruling beneficial to the Dacres.

The plaintiffs have attacked this contention of impossibility, and the appeal itself, as previously noted, as in fact being based

on a stipulation between the parties and therefore not validly a matter subject to appeal. There is evidence in support of their contention, as will be pointed out later; but since there is no unequivocal demonstration or statement that the entire disposition was part of a stipulated agreement, we prefer to test the order without that support. If it is still valid and enforceable, the circumstance of stipulation, if present or absent, is of little moment.

The issue of the judgment as being one based on an agreement surfaced at a hearing on June 2, 1976, when a writ of possession was sought on behalf of the Tromblays. Counsel for the Dacres through the May hearings sought to withdraw. New counsel entered, asserting that the Dacres were claiming that there was no agreed disposition on May 13, but that the decision that day was the court's. As has been noted, we are reviewing it as such and not as a settlement.

The writ of possession was granted, and the trial court, being the same court that heard the matter in May, made no reference to the claim of settlement. Previous counsel was allowed to withdraw.

At that same hearing, for the first time, the Dacres raised the issue of an equitable mortgage, asserting that the option gave them an interest in the property that required foreclosure.

Although objected to by the plaintiffs as not having been timely raised in this litigation, the issue of equitable mortgage was strongly urged before this Court. In its order of possession, the lower court held that the doctrine of equitable mortgage did not apply to the facts in this case. This ruling was sound.

■ ■ The doctrine of equitable mortgages does apply to agreements denominated as a "contract for a deed" or, in older usage, "bond for a deed." These agreements are entered into, in many instances, where the prospective purchaser cannot raise the difference between the price of the property and an acceptable mortgageable balance. The prospective purchaser occupies the premises and makes the payments until the point of delivery of the deed and execution of the mortgage is reached. Since the payments are applied to the purchase obligation as they accumulate, an equity, though perhaps small, comes into being. It is this interest that is referred to as the equitable mortgage interest that requires foreclosure. *Aldrich* v. *Lincoln*

*Land Corp.*, 130 Vt. 372, 294 A.2d 853 (1972). See also *Jacobs* v. *Jewett*, 122 Vt. 5, 7, 162 A.2d 925 (1960).

Unlike both the *Aldrich* and the *Jewett* cases, this is not one where the rental payments for the one-year lease were to be applied on the purchase price. Quite clearly, under the option provision previously quoted, the option, if exercised, took effect at the end of the lease. The purchase price was fixed and no equity would be acquired until at least the first payment was made under the option agreement. No such payment was ever made in this case.

To hold otherwise would render every lease containing a purchase option an agreement creating an equitable mortgage situation from the time of notice of intention to exercise it. It would follow, then, in all such circumstances, foreclosure would be required. This is not the principle behind the equitable mortgage concept. Rather, it rests on the principle of the accumulation of an equitable interest in the property that deserves recognition even without the execution of a formal mortgage instrument. *Van Dyke* v. *Cole*, 81 Vt. 379, 396-97, 70 A. 593 (1908). This is not such a case, and the lease instrument demonstrates no such intention, unless and until purchase money payments were made without the execution of a mortgage deed.

This is the view the trial court took of the instrument, and its interpretation was for that court as an issue of law. *Mahoney* v. *Leddy*, 126 Vt. 98, 101, 223 A.2d 456 (1966); *Davidson* v. *Vaughn*, 114 Vt. 243, 247, 44 A.2d 144 (1945). No part of this decision rested on any contested issue of fact, and the judgment must be sustained.

It has already been noted that there is a claim that the result reached was agreed to by the parties. The order of the court below refers to both stipulation and agreement of the parties. Supporting this view are executed documents in existence in prospective implementation of the order allowing exercise of the option terms. As the order states, the documents were already in the possession of the trial court at the time the order was given from the bench, and then in the custody of the court clerk in case the option and order were to be carried out. These include a warranty deed executed by the plaintiffs in favor of the defendants, a mortgage deed executed by the defendants in favor of the plaintiffs, and a promissory note for $75,000.00 also executed by the defendants in favor of the plaintiffs. All of these

instruments are dated May 13, 1976. But without a record of the agreement, we are reluctant to find anything more in the references than the obvious agreement and concessions of the parties as to terms, times of payment and amounts due that supply the practical details of the court's alternative orders. No more is necessary, and the order of the court, as has already been noted, is fully supportable on the state of the record.

*Judgment affirmed.*