2014 VT 26

## Brattleboro Savings and Loan Association v. Richard E. Hardie, et al.

[94 A.3d 1132]

No. 12-332

Present: **Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and Bent, Supr. J.,** Specially Assigned

Opinion Filed March 21, 2014

146

*James B. Anderson* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Plaintiff-Appellant.

*Richard E. Hardie*, Pro Se, Avon, New Jersey, Defendant-Appellee.

*Robert S. DiPalma* of *Paul Frank + Collins P.C.*, Burlington, for Intervenor-Appellee.

¶ 1. **Dooley, J.** Plaintiff Brattleboro Savings and Loan Association appeals a superior court decision denying plaintiff's motions for summary judgment and granting intervenor/appellee Lisa Mangini's cross-motion for summary judgment, ruling that Mangini holds title to a Weathersfield, Vermont property, free and clear of a mortgage to plaintiff. The superior court ruled that the mortgage was inoperative because Mangini's husband, defendant Richard Hardie, mortgaged the property without the participation of Mangini in violation of 27 V.S.A. § 141(a). We reverse the grant of Mangini's motion for summary judgment and the denial of Brattleboro Saving's motions for summary judgment, and remand.

¶ 2. The essential facts are undisputed. In 2002, defendant Richard Hardie borrowed $209,000 from Brattleboro Savings in order to purchase a vacation home and surrounding land in Weathersfield, Vermont. The loan was secured by a mortgage on the property and included a "second home rider" clause, asserting that the property was not a primary residence. Hardie was married to Mangini at the time, but was the sole owner of the

property, and Mangini did not sign either the promissory note or the mortgage. Hardie refinanced the property in 2004 and 2005, both times without Mangini's participation. These mortgages each contained a second home rider clause.

¶ 3. By 2007, Hardie and Mangini's marriage was deteriorating. In April 2007, Mangini left the couple's New Jersey home and moved into the Weathersfield property. In February 2008, Mangini filed for divorce in the Windsor Superior Court, Family Division.[1] In her divorce filing, Mangini claimed that the property had become her primary residence as of May 2007. Also in the divorce filing, Mangini requested "an award of the Weathersfield home and the adjoining land either without any encumbrances, or, in the alternative, that [Hardie] be responsible for paying off and releasing the mortgage[ ] to [Brattleboro Savings]."[2]

¶ 4. In April 2008, while Mangini was occupying the property and the divorce was pending, Hardie refinanced the mortgage on the Weathersfield property. The 2008 refinancing was completed without Mangini's participation, and Hardie again claimed that the property was a second home only. In January 2011, Brattleboro Savings commenced a foreclosure action on the property, naming only Hardie as a defendant.

¶ 5. Despite not being named in the foreclosure case, Mangini filed an answer asserting an affirmative defense that she had established a homestead interest in the property prior to the 2008 mortgage, and that therefore the 2008 mortgage was "inoperative to convey" her homestead interest. Due to the unusual posture of this case, Brattleboro Savings filed two motions for summary judgment, one requesting a foreclosure judgment against Hardie and the second seeking judgment against Mangini on her homestead claim. The motion directed at Mangini specifically alleged that Mangini did not have a homestead interest because she possessed neither a legal nor an equitable interest in the property. Brattleboro Savings made two alternative arguments in the event that the court found a valid homestead exemption. First, Brattleboro Savings argued that the 2008 refinancing fell under

---

[1] The divorce action has concluded in family court, and an appeal of the final judgment is pending in this Court as *Lisa Mangini v. Richard Hardie*, Supreme Court Docket No. 2012-362. We have referenced events in that action only when they were in the civil division record when this case was decided.

[2] This request apparently referred to the 2005 mortgage in effect at the time the divorce action was filed.

the exception in 27 V.S.A. § 141(a) for purchase money mortgages and therefore did not require participation by "execution and acknowledgement" of Mangini to give the mortgage priority over her homestead exemption. Second, Brattleboro Savings argued that if Mangini were to have a homestead interest, it would be subject to all preexisting causes of action against the homestead as provided in 27 V.S.A. § 107, which states that homestead interests "shall be subject to attachment and levy of execution upon causes of action existing at the time of acquiring the homestead." Mangini filed a cross-motion for summary judgment, detailing for the first time her claim that she had acquired an equitable interest in the property by her divorce filing.

¶ 6. The court denied Brattleboro Savings's motions for summary judgment and granted summary judgment in favor of Mangini, declaring the entire 2008 mortgage on the property unenforceable against Mangini. The court reasoned that Mangini acquired an equitable interest in the property when she filed for divorce, thus fulfilling the dual requirement for establishing a homestead interest — occupancy and equitable title — as set out in *In re Soter*, 26 B.R. 838 (Bankr. D. Vt. 1983).[3] The court held that Mangini was entitled to full immunity from the note and mortgage, not merely protection for the $125,000 value of the homestead exemption as provided in 27 V.S.A. § 101. Following the denial of Brattleboro Savings's motion to reconsider, the superior court granted permission to appeal its summary judgment decisions. Brattleboro Savings subsequently appealed.

¶ 7. We review summary judgment decisions de novo. *Doe v. Forrest*, 2004 VT 37, ¶ 9, 176 Vt. 476, 853 A.2d 48. As provided in Vermont Rule of Civil Procedure 56(a), summary judgment will be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). The nonmoving party, in this case Brattleboro Savings, is given "the benefit of all reasonable doubts and inferences." *Forrest*, 2004 VT 37, ¶ 9. In this case, the parties on appeal agree that there is no material

---

[3] Because homestead law is invoked so frequently in the context of bankruptcy, we note that the federal bankruptcy court in this state has significant experience interpreting Vermont homestead statutes. Many significant precedents underlying our decision in this case come from that court. We find them to be well-reasoned and have generally chosen to follow them in this decision.

issue of fact and the questions presented to us involve only issues of law.

¶ 8. ▮ Brattleboro Savings has appealed on a variety of issues, asserting that the court erred in holding that Mangini had acquired an equitable interest upon filing for divorce; that the court had unjustly enriched Mangini; that the court erred by not considering the 2008 mortgage to be a purchase money mortgage; that the court abused its discretion by refusing to apply the doctrine of equitable subrogation; that the court erred by not limiting Mangini's homestead interest to $125,000; and that the court lacked subject matter jurisdiction to declare the 2008 mortgage entirely void. We address only the first issue and resolve the appeal by deciding that Mangini did not acquire equitable title to the property by filing for divorce. Because Mangini did not acquire equitable title, she is not entitled to a homestead exemption from the 2008 mortgage, and the security created by the 2008 mortgage is valid against her. See *Soter*, 26 B.R. at 841 (holding that equitable or legal title is required to establish homestead exemption).

¶ 9. ▮ ▮ In Vermont, the homestead exemption is a statutory creation.[4] The homestead exemption at issue in this case was originally enacted in 1849. 1849, No. 20, § 1; 27 V.S.A. § 101. The current version of the statute states: "The homestead of a natural person . . . not exceeding $125,000.00 in value, and owned and used or kept by such person as a homestead . . . shall be exempt from attachment and execution except as hereinafter provided." 27 V.S.A. § 101. The term "homestead" "signifies the dwelling house in which the family resides, with the usual and customary appurtenances." *In re Avery*, 41 B.R. 224, 225 (Bankr. D. Vt. 1984). The purpose of the homestead exemption in Vermont, as elsewhere, is to conserve family homes. *Estate of Girard v. Laird*, 159 Vt. 508, 510, 621 A.2d 1265, 1266 (1993); see *In re Roberge*, 307 B.R. 442, 446 (Bankr. D. Vt. 2004) ("[T]he intention of Vermont's homestead exemption is to preserve a home for the family."); see generally R. Waples, Homestead and Exemption, ch. 1, § 2, at 3 (1893) ("The conservation of family homes is the

---

[4] This is true of homestead interests in most jurisdictions. "The estate of homestead is purely the creature of statute, and can be created only in the mode prescribed by the statute." C. Boone, Real Property, ch. 8, § 80(a), at 200 (1901) (citing *Abbott v. Cromartie*, 72 N.C. 292, 294 (1875)).

purpose of homestead legislation. The policy of the state is to foster families as the factors of society, and thus promote the general welfare. To save them from disintegration and secure their permanency, the legislator seeks to protect their homes from forced sales so far as it can be done without injustice to others.").

¶ 10. ■ The statute requires that a homestead be both owned and occupied as a homestead by the person claiming it.[5] Regarding the ownership requirement, we have explained that "the statute applies to an equitable as well as legal ownership; an incumbered as well as an unincumbered estate." *Morgan v. Stearns*, 41 Vt. 398, 407 (1868); see also *Doane's Ex'r v. Doane*, 46 Vt. 485, 493 (1874) ("It is well settled that a homestead right exempt from attachment, may exist in a mere equitable interest in premises occupied or used or kept as a homestead.").

¶ 11. ■ ■ Also enacted in 1849, and essentially unchanged since that time, is § 107, which states: "Such homestead shall be subject to attachment and levy of execution upon causes of action existing at the time of acquiring the homestead." 27 V.S.A. § 107; see 1849, No. 20, § 6. We have clarified that § 107 is intended to prevent parties from hiding assets from creditors by purchasing property. *W. River Bank v. Gale*, 42 Vt. 27, 31-32 (1869). The Legislature has further provided:

> A homestead or an interest therein shall not be conveyed by the owner thereof, if married, except by way of mortgage for the purchase money thereof given at the time of such purchase, unless the wife or husband joins in the execution . . . . A conveyance thereof . . . shall be inoperative so far only as relates to the homestead provided for in this chapter.

27 V.S.A. § 141(a). Thus, when two spouses have established a homestead together, one spouse cannot convey the other's interest "without the express, written consent and participation of the other co-owner." *In re Jakab*, 293 B.R. 621, 626 (Bankr. D. Vt. 2003).

¶ 12. ■ No person may have more than one homestead at a time. See 27 V.S.A. § 109; *In re Estate of Wolff*, 108 Vt. 54, 56, 182

---

[5] This is consistent with the majority of homestead statutes. Occupancy of the property is typically required, but "ownership by some title is an essential everywhere, required by every statute." R. Waples, *supra*, ch. 4, § 2, at 103-04.

A. 187, 188 (1936); *Goodall v. Boardman*, 53 Vt. 92, 101 (1880). Likewise, cohabitating family members may normally claim only one homestead exemption per household. *D'Avignon v. Palmisano*, 34 B.R. 796, 800 (D. Vt. 1982). Where spouses have separated and are living apart, however, they may each claim a separate homestead if the court finds that "each homestead is necessary to preserve a family unit" and that "there is no evidence of fraud." *Roberge*, 307 B.R. at 448. A prerequisite to each spouse's homestead claim is that each spouse separately meets the requirements of establishing a homestead interest.

¶ 13. The parties agree that § 141(a) would apply only if Mangini had a homestead exemption at the time that the new mortgage was created. The trial court found that Mangini occupied the property as her principal residence beginning in April 2007. The court also found that Mangini had an "equitable interest" because, upon her divorce filing in February 2008, the family court "exercised jurisdiction over all of the marital property, and Ms. Mangini stood to be awarded any or all of it, regardless of which of the spouses held legal title." The court found additional evidence of Mangini's interest in the property in the form of the family court's interim domestic order, which was issued before the 2008 mortgage was created and forbade either spouse to "remove, sell, assign, transfer, dispose of, lend, dissipate, mortgage or encumber any marital property." Because the occupancy, divorce filing and interim domestic order preceded the new mortgage, the court found that § 107 did not apply, but that § 141(a) did apply to make the mortgage inoperative relative to the homestead exemption.

¶ 14. ■ Mangini's argument here is that the "equitable interest" found by the trial court is sufficient to give her a homestead exemption. In response, we stress that the governing statute, 27 V.S.A. § 101, requires that the property claimed as a homestead must be "owned" by the person claiming the exemption, and our precedents recognizing equitable-title interests must be viewed in that context.

¶ 15. ■ Equitable title is defined as "title that indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title." Black's Law Dictionary 1523 (8th ed. 2004). This is a rigorous definition — one that requires not just a possibility of acquiring title, but a concrete right. Although

"homestead statutes are remedial . . . [and] are to be interpreted liberally to accomplish their remedial purpose," *Mercier v. Partlow*, 149 Vt. 523, 524, 546 A.2d 787, 789 (1988), we must apply this definition here. All of our cases are consistent with the requirement for equitable title and its definition. See *Canfield v. Hard*, 58 Vt. 217, 225-26, 2 A. 136, 151-52 (1886) (holding that an enforceable oral contract for a conveyance of land vested equitable title in the grantee and created a homestead exemption, especially where the grantee took possession, built a house, and made other improvements to that land in expectation of becoming the future owner); *Doane*, 46 Vt. at 493 (recognizing a homestead exemption where the defendant held a right of redemption in property he occupied as a home even though legal title to that right was held by a trustee for his benefit); *Stearns*, 41 Vt. at 406-07 (applying a homestead exemption where the defendant had equitable ownership of a farm on which he had lived with his family for twelve years, although legal title to the farm was held by the defendant's brother and another man, "for purposes of security"); see also *Soter*, 26 B.R. at 841 (holding that a purchaser gained equitable title and a homestead exemption after she executed a valid agreement for the purchase and sale of property and occupied that property as a home). In each of these cases, the party holding equitable title had a definitive right to acquire formal legal title.

¶ 16. ■ Cases in which we have found equitable title — or even equitable interest — in other contexts also support this mainly enforceable-contract-driven derivation of equitable title. The less certain the right to the property, the less likely we are to find equitable title. See, e.g., *Field v. Costa*, 2008 VT 75, ¶ 31, 184 Vt. 230, 958 A.2d 1164 (holding that, where potential purchaser's alleged contractual right to purchase property was barred by third party's right of first refusal, potential purchaser never acquired equitable title to property); *Mad River Valley Enters., Inc. v. Town of Warren Bd. of Adjustment*, 146 Vt. 126, 128-29, 499 A.2d 759, 760-61 (1985) (holding that, where assignment transferring property interests never occurred, alleged assignee held no title to property despite parties' apparent intent to eventually transfer rights to assignee); see also *Avery*, 41 B.R. at 226 (holding that wife's occupancy of property with husband, the legal owner of the property, was insufficient to establish homestead exemption for wife); *Prue v. Royer*, 2013 VT 12, ¶¶ 29, 41,

193 Vt. 267, 67 A.3d 895 (finding that an enforceable contract for deed creates an equitable interest in vendees); *Gregoire v. Gregoire*, 2009 VT 87, ¶¶ 23-24, 186 Vt. 322, 987 A.2d 909 (holding that, where family had agreed to list son on parents' property deed as joint tenant with right of survivorship solely for estate-planning purposes, and parents managed and benefitted from property for twenty years without son's participation, resulting trust existed under which parents had equitable title — and therefore a right to the use and benefit of the property during their lifetimes — and son did not); *Tromblay v. Dacres*, 135 Vt. 335, 339-40, 376 A.2d 753, 756 (1977) (stating that lease with purchase option, unlike contract for deed, does not create equitable mortgage interest in lessor).

¶ 17. The trial court found a sufficient equitable interest to support a homestead exemption in the family court's jurisdiction over the marital property and the interim domestic order. The jurisdictional statute on which the court relied is 15 V.S.A. § 751, which provides: "All property owned by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court. Title to the property . . . shall be immaterial . . . ." The statute does not establish title or ownership in either party to a divorce; indeed it explicitly operates irrespective of title. Its purpose is to give the court jurisdiction over all the property of the parties. See *Lynch v. Lynch*, 147 Vt. 574, 576, 522 A.2d 234, 235 (1987). Whether or not a party's interest in the marital property could be classified as "equitable," it is no better than an expectancy that particular property will be distributed as that party seeks. In this case, the family court divorce record, which is also before this Court on appeal, shows that both parties sought the Weathersfield property. The family court has broad discretion in distributing marital property and could have awarded the Weathersfield property to either party. Section 751 did not give Mangini equitable title to the Weathersfield property.

¶ 18. Nor do we find that the family court's injunction against alienation of marital property affects our result. The intent of the order is to maintain the marital property for whatever distribution the court will make in its final order. It did not give either party a right to any item of property. The value of the Weathersfield property did not materially decrease as a result of Hardie's actions and thus the purpose of the injunction was not violated.

¶ 19. The trial court should have granted Brattleboro Savings's motion for summary judgment with respect to Mangini's claim of a homestead exemption, and denied Mangini's motion.

*Reversed and remanded.*

¶ 20. **Burgess, J.,** concurring. I concur with the majority's mandate as well as its underlying reasoning, but I also concur with Judge Bent's opinion as an alternative basis for reversing the superior court summary judgment decisions.

¶ 21. **Bent, Supr. J.,** Specially Assigned, concurring. I concur with the majority's mandate because Mangini cannot rely upon 27 V.S.A. § 141(a) to avoid an existing mortgage that merely refinanced a debt on the homestead that existed before she established the homestead. Under the circumstances of this case, I agree with the majority that neither her pending divorce action, nor the family division's interim domestic order prohibiting either spouse from encumbering any marital property, created an equitable interest to support Mangini's homestead exemption claim with respect to the Vermont property. I am concerned, however, with the implication in the majority's opinion that spouses generally may not rely upon § 141(a) to avoid the consequences of a unilateral spousal conveyance unless they can prove an equitable interest equivalent to a contractual right to marital property owned solely by the conveying spouse. As I indicate below, this implied holding could be applied in future cases under circumstances where § 141(a) would appear to provide protection to nonsigning spouses. I believe that a more fundamental basis for rejecting Mangini's reliance upon § 141(a) in the present circumstances is simply that the 2008 mortgage did not increase the debt existing at the time Mangini established a homestead in the Vermont property and thus may not be deemed inoperative under § 141(a). See 27 V.S.A. § 107 ("Such homestead shall be subject to attachment and levy of execution upon causes of action existing at the time of acquiring the homestead, except as otherwise provided in this chapter.").

¶ 22. Like §§ 101 and 107 of Title 27, the prohibition against unilateral spousal alienation of the marital homestead in § 141(a) has been the law in Vermont since 1849. 1849, No. 20, § 5.[6] The purpose of "joinder" statutes such as this, which are part of

---

[6] This earliest version of the statute provided as follows:

virtually every state's homestead laws, is not only to protect the financial interests of the family, but in particular to protect the nonsigning spouse from unilateral alienation of the homestead by the conveying spouse. See, e.g., *In re Clark*, 384 B.R. 563, 566 (Bankr. W.D. Mo. 2008) (stating that purpose of Missouri's statute prohibiting unilateral conveyance of homestead "is to protect the non-conveying spouse"); *HSBC Mortgage Servs., Inc. v. Graikowski*, 812 N.W.2d 845, 848 (Minn. Ct. App. 2012) (noting that Minnesota courts have applied joinder statute "in numerous cases to protect a nonsigning spouse to a conveyance").

¶ 23. This statutory right against unilateral spousal alienation or encumbering of homesteads is provided to spouses notwithstanding — in fact because of — the nonsigning spouse's lack of title in the homestead property. See *Taylor v. Maness*, 941 So. 2d 559, 564 (Fla. Dist. Ct. App. 2006) (holding that homestead status may not be destroyed unless both spouses join in conveyance of homestead to third party, even where homestead is owned by only one spouse); *Rendleman v. Rendleman*, 8 N.E. 773, 776 (Ill. 1886) ("[I]t is unimportant whether the title to the homestead premises is in the husband or in the wife. Whether in the one or the other, the holder of the title cannot wrongfully deprive the other of the enjoyment of the homestead premises."); R. Waples, Homestead and Exemption, ch. 3, § 5, at 68 (1893) ("The homestead is that of both husband and wife, though he owns it . . . . Neither had the sole right of [e]ncumbering, alienating or enjoying it, before they were legally parted from each other; their homestead rights were equal."). In other words, the homestead right in joinder statutes is typically derivative in nature.

¶ 24. Indeed, the right obtained through joinder statutes is merely one against unilateral spousal alienation and vests no title in the nonowner spouse. See *Cole v. Cole*, 117 Vt. 354, 364, 91 A.2d 819, 825 (1952) ("The homestead law does not vest any title to the homestead in the wife of the general and legal owner, during his life-time, but only a contingent and inchoate right which, if she

---

Such homestead shall not be alienated or mortgaged by the owner thereof, if a married man, except by the joint deed of such husband and wife, executed and acknowledged in the manner provided for the conveyance of the lands of married women: *Provided*, however, that such husband may, without the consent of his wife, mortgage such homestead, at the time of the purchase thereof, for the payment of the purchase money.

do[es] not release, by joining in a conveyance or otherwise become barred by operation of law, she may enforce, after his death, even though he may have conveyed it away absolutely in his lifetime."); *Winkles v. Powell*, 55 So. 536, 538 (Ala. 1911) ("The wife has no estate in the homestead when the legal title is in the husband, and the only rights she has with respect thereto are the common-law right of occupancy jointly with the husband, and the statutory right of veto against its alienation, so long as it remains the family homestead."); *Speck v. Anderson*, 318 N.W.2d 339, 343 (S.D. 1982) ("The [statutory] requirement . . . that a spouse must join in the conveyance of a homestead does not create in the non-owner spouse any estate in the land represented by the homestead."); R. Waples, *supra*, ch. 4, § 7, at 121 ("The joint-title, created by the husband's declaration of homestead upon his separate property, is merely a title to estate of homestead — not to the realty itself, as a general rule. The husband conveys no land to his wife by declaring homestead; he lets her in to equal control as to alienation, and equal right to enjoyment, and to that protection which the law gives to all homestead holders.").[7]

¶ 25. The majority's point that a homestead claim must be founded on either legal title or equitable title equivalent to a contractual right to the property is supported by cases construing 27 V.S.A. § 101, which generally defines homesteads, rather than the statute that is the subject of this appeal, § 141(a), which concerns a spouse's derivative homestead rights. I realize that in this case Mangini is claiming a homestead in her own right, following her separation from her husband, in a different property than the homestead established during the marriage before the parties separated. But the majority's broad holding regarding the requirement of equitable title in the strictest sense would appear to carry over into situations where the nonsigning, nonowner spouse remained in the original marital homestead after the owner spouse left the marital home and established a separate homestead. For example, would the majority's strict equitable title requirement apply if the nonowner spouse obtained a relief-from-abuse order, and, as a result, the owner spouse left the marital

---

[7] By citing to early cases that refer to archaic legal relationships and presumptions concerning men and women, I do not mean to suggest that such relationships and presumptions have any validity today, but rather only to emphasize that joinder laws were meant to establish derivative homestead rights in spouses notwithstanding a spouse's lack of any claim to title in the marital homestead.

homestead, established a new homestead, and afterwards burdened the marital homestead with a new mortgage not signed by the nonowner spouse? Under the same scenario, would the marital homestead be subject to liabilities incurred by husband, say in an automobile accident, after he left the home? Apparently so in both cases, given the majority's broad holding, yet the law in this area is convoluted and uncertain. Compare *Merchants Nat'l Bank v. Se. Fire Ins. Co.*, 751 F.2d 771, 777 (5th Cir. 1985) (concluding under Mississippi homestead law that "[w]hen a husband removes himself from homestead property without any intent to return and his wife consents, the homestead is abandoned notwithstanding wife's continued residence on the land."), with *Larson v. Wells Fargo Bank, N.A.*, 799 F. Supp. 2d 961, 963 (D. Minn. 2011) (finding mortgage signed by husband void based on wife not having signed it, even though she had separated from husband twenty years earlier and lived in separate home), and *Coy v. Mango Bay Prop. & Invs., Inc.*, 963 So. 2d 873, 877-79 (Fla. Dist. Ct. App. 2007) (concluding that husband who had left marital home owned by wife pursuant to injunction was entitled to hearing on issue of whether he had constitutionally protected right in marital home so as to preclude wife under joinder law from unilaterally mortgaging property). See generally R. Waples, *supra*, ch. 9, § 2, at 258-60 (describing joinder statutes as giving nonowner wife an estate to possess and enjoy homestead during life of householder unless certain exceptions applied).

¶ 26. Rather than rely upon a potentially overbroad holding that could ensnare spouses entitled to § 141(a)'s protection under different circumstances, I would reject Mangini's claim under § 141(a) based on the uncontested fact that the 2008 mortgage signed solely by her husband did not increase the debt on the subject property that existed prior to Mangini's homestead claim. The superior court found that the debt associated with the property was originally a purchase money mortgage that was refinanced in 2004, 2005 and 2008. The court also found that Mangini began living in the subject property in April 2007. At that time, the property was encumbered by the debt from the 2005 refinancing of the mortgage. The court found that the 2008 refinancing was with no cash out. Hardie asserted that the 2008 mortgage refinance was intended simply to obtain a lower interest rate and did not increase the preexisting debt on the property. Mangini produced no evidence to contradict this assertion, which is consistent with the court's findings.

¶ 27. Under these circumstances, I believe that 27 V.S.A. § 107 applies, as Brattleboro Savings argued both below and on appeal, to preclude Mangini from relying upon § 141(a) to make the 2008 mortgage inoperative. Section 107, which was also part of the original Homestead Act in 1849, 1849, No. 20, § 6, provides that homesteads "shall be subject to attachment and levy of execution upon causes of action *existing at the time of acquiring the homestead*, except as otherwise provided in this chapter." (Emphasis added.) Recently, this Court noted that, early on, we "squarely rejected the contention that 'causes of action' in the statute were limited to a creditor's suit on the [preexisting] debt." *Weale v. Lund*, 2006 VT 66, ¶ 11, 180 Vt. 551, 904 A.2d 1191 (mem.) (citing *Robinson v. Leach*, 67 Vt. 128, 129, 31 A. 32, 33 (1895), which stated that statute was "the same . . . as though it read, 'debts existing' "). We reaffirmed the view that § 107 applies to "debts existing when the homestead was acquired." *Id.* ¶ 5.

¶ 28. As stated above, it is undisputed that the debt from the 2005 refinanced mortgage existed at the time Mangini "acquired" the homestead. I do not believe that Mangini can escape the consequences of that preexisting debt under § 141(a) based simply on the fact that it was refinanced with no cash out solely by the owner-husband a month or so after she claimed to have established a homestead on the property. In *Robinson*, the issue was "whether a homestead is exempt from a note given by the homesteader after its acquisition, in renewal of his notes given before its acquisition, the parties to the notes being the same." 67 Vt. at 129, 31 A. at 33. We stated that, particularly with respect to the renewal of mortgage notes, "[a]s long as the original debt can be traced the security remains, no matter how many renewals there have been." *Id.* In allowing the claim against the homestead, we reasoned as follows:

> The new note was but a new evidence of the old debt. True, the old notes were extinguished as affording a ground or cause of action, but the debt evidenced thereby continued to exist for the purpose of preserving the right against the homestead that was originally connected with it.

*Id.* at 130, 31 A. at 33.

¶ 29. Commentators and courts agree with this principle. See, e.g., R. Waples, *supra*, ch. 10, § 2, at 284 (stating that wife need

not sign mortgage on homestead given to secure debt created prior to establishment of homestead when "it creates no additional burden relative to her rights and interests"), ch. 12, § 4, at 377 (stating that some courts do not require joinder of spousal signatures on mortgage that merely secures debt antecedent to establishment of homestead); *Harris v. Mosley*, 111 S.W.2d 563, 564-65 (Ark. 1937) (stating that "any *increase* in the indebtedness secured by the mortgage made" without wife's signature would not be binding on her (emphasis added)). Some courts have arrived at the same principle on equitable grounds.[8] Cf. *Swift v. Kraemer*, 13 Cal. 526, 530 (1859) (refusing on equitable grounds to apply joinder rule to prevent creditor from collecting on husband's unilateral loan that paid off preexisting homestead lien); *Katsivalis v. Serrano Reconveyance Co.*, 138 Cal. Rptr. 620, 627 (Ct. App. 1977) (concluding that policy of joinder law is not subverted by allowing lender, who had loaned money to one spouse to pay off preexisting encumbrances on homestead, to be subrogated to rights of prior lender to avoid unjust enrichment).

¶ 30. Interpreting § 107 in this manner does not undermine either the underlying policy or the plain language of § 141(a). Section 141(a) is intended to preclude one spouse from burdening another by unilaterally alienating or encumbering a homestead without the agreement of both spouses. That statute is not intended to allow spouses to avoid debts existing at the time of the establishment of the homestead based on one spouse's unilateral signing of a mortgage that does not increase that preexisting debt. Cf. *Wells Fargo Home Mortg., Inc. v. Newton*, 646 N.W.2d 888, 895 (Minn. Ct. App. 2002) (concluding that "harsh result" of trial court's interpretation of joinder statute to invalidate mortgage signed by one spouse was inconsistent with policy underlying statute, given that nearly half of unilaterally signed mortgage was used to refinance original contract for deed on homestead and thus could be considered, to that extent, purchase money mortgage). Whether we consider the 2008 mortgage to be subject to the express purchase money mortgage exception contained in § 141(a) or the preexisting debt rule set forth in § 107, wife cannot avoid the consequences of that mortgage under § 141(a). See

---

[8] Equitable subrogation may also serve as an available alternative remedy in situations such as this. In this case, however, the appellant did not raise that remedy until its sur-reply in connection with a post-judgment motion.

*Fraser v. Sleeper*, 2007 VT 78, ¶ 12, 182 Vt. 206, 933 A.2d 246 ("We interpret statutes to avoid absurd and illogical results . . . in favor of reasonable construction when a plain reading of the statute would produce a result demonstrably at odds with any conceivable legislative purpose." (quotation omitted)). For the above reasons, I concur in the majority's mandate but not the reasoning underlying that mandate.